ROOT v. RAILWAY COMPANY.

A., to whom had been assigned letters-patent, filed, after the expiration of them, which took place July 6, 1873, his bill against B., charging that the latter had during their term infringed them by using the patented invention, whereby he realized gains, profits, and savings, which he should be compelled to account for and pay to the complainant. The bill was, on demurrer, dismissed. *Held*, that the decree below is proper, the bill being merely for an account of profits and damages against an infringer, and it not appearing from the case thereby made that any ground of equitable jurisdiction exists, or that A. has not a complete remedy at law whereby damages for the wrongs complained of can be recovered.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Albert H. Walker* for the appellant.

*Mr. George Payson* for the appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Thomas Sayles, as assignee of the letters-patent originally granted to Henry Tanner for an improvement in railroad car brakes, dated July 6, 1852, and which, on July 5, 1866, were renewed and extended for the additional term of seven years, which expired July 6, 1873, filed his bill in the court below on Dec. 9, 1878, against the Lake Shore and Michigan Southern Railway Company. He avers that, by virtue of the assignments to him, he was invested with all rights of action for infringements of the patent which had occurred, and particularly

those of which it was alleged the defendant had been guilty from Aug. 6, 1869, to July 6, 1873, having, as is averred, during that period, used upon its railroad cars the patented brakes, but how many, the bill states, the complainant is ignorant and cannot set forth, but avers that the number so used was large, and that defendant had derived, received, and realized great gains and profits therefrom, but to what amount he is ignorant and cannot set forth.

The prayer of the bill is that the defendant may be compelled to account for and pay to the complainant all the gains, profits, and savings which it derived, received, or realized from or by reason of the use of said brakes.

To this bill a general demurrer was filed, alleging, as grounds thereof, that the bill does not contain any matter of equity on which the court could grant any relief, and that the complainant is not entitled to the relief prayed for, because he had a plain, adequate, and complete remedy at law, and also because it appeared on the face of the bill that the causes of complaint were barred by the Statutes of Limitation both of the United States and of the State of Illinois.

This demurrer was sustained and the bill dismissed. The decree of the Circuit Court was brought here for review. Sayles having died, Charles T. Root was, as his executor, substituted in this court as the appellant.

The propositions mainly relied upon by the appellee in support of the decree, are, —

*First*, That after the expiration of a patent, equity has no jurisdiction to entertain a bill, merely for an account and the recovery of the profits of an infringer, during its existence, the remedy being at law for damages ; and,

*Second*, That, even if, in certain cases, such a jurisdiction exists, the present does not fall within it.

On the other hand, it is contended on the part of the appellant that, in cases for the enforcement of the rights of patentees, resort may be had, as matter of right, to a court of equity, as a distinct head of its jurisdiction, for the mere purpose of establishing an infringement and ascertaining and recovering the profits of the infringer, upon the independent equity that he is for that purpose a trustee of his gains for the

use of the true owner of the patent and liable to account as such. In support of this contention, we are referred by his counsel to numerous decisions of the Circuit Courts, many of which, it is claimed, are directly upon the point, and to several cases in this court, in which, it is alleged, the same doctrine is either virtually decided or assumed; which, it is further argued, though not supported by the modern decisions of the English chancery, is found in its earlier precedents.

An examination of the practice and opinions of the Circuit Courts undoubtedly shows much diversity, incapable of reconciliation, and makes it necessary, as far as it can be done, by a deliberate judgment of this court, to remove the question out of its present uncertainty, by a settlement upon some basis of principle, in harmony with our system of equity jurisprudence, developed and modified by legislation. To effect this satisfactorily and intelligently, it will be necessary to review the course of legislation, and judicial decision in this court, so far as it bears upon the question from the beginning.

Prior to the passage of the act of Feb. 15, 1819, c. 19 (3 Stat. 481), Congress had passed three laws, in execution of the power conferred by the Constitution itself, and in furtherance of the policy thereby indicated, to secure to inventors an exclusive right of property in their inventions. The first of them, the act of April 10, 1790, c. 7 (1 Stat. 109), gave as a remedy for its violation an action at law upon the case for damages, and forfeited the infringing article. The next was the act of Feb. 21, 1793, c. 11 (1 Stat. 318), which fixed the rule and measure of damages recoverable in an action at law upon the act at three times the price at which the patentee had usually sold or licensed to other persons the use of the invention. This was changed by the act of April 17, 1800, c. 25 (2 Stat. 37), to three times the actual damage sustained by the patentee by reason of the infringement. By neither of these acts, however, was any jurisdiction conferred upon the courts of the United States in equity. In *Livingston* v. *Van Ingen* (1 Paine, 45), Mr. Justice Livingston held that to vest such jurisdiction by reason of the subject-matter, as a case arising under the laws of the United States, to be exercised in controversies between parties, without regard to their citi-

zenship, it required the express authority of an act of Congress; and the parties to that suit being citizens of New York, the bill was dismissed. The controversy was thereupon renewed in the courts of that State; and the Chancellor having refused the injunction asked for, it was brought by appeal into the court for the correction of errors. 9 Johns. (N. Y.) 507. It was there objected that the right in question rested upon statute alone, which prescribed remedies at law for its violation, which, it must be deemed, were intended to be exclusive. But the decision affirmed the jurisdiction. "The principle is," said Kent, C. J. (p. 587), "that statute privileges, no less than common-law rights, when in actual possession and exercise, will not be permitted to be disturbed until the opponent has fairly tried them at law and overthrown their pretension." The same learned judge refers also to the practice of the Federal courts in granting injunctions under the patent law, mentioning two instances, — one, the case of *Morse* v. *Reid*, an injunction bill filed in 1796 to restrain the invasion of a copyright; the other, *Whitney* v. *Fort*, in which an injunction was granted to restrain the violation of the patent for the cotton-gin.. Of course, in those cases the jurisdiction of the court depended on the citizenship of the parties.

Congress then passed the act of Feb. 15, 1819, c. 19, which enacted "that the Circuit Courts of the United States shall have original cognizance, as well in equity as at law, of all actions, suits, controversies, and cases arising under any law of the United States, granting or confirming to authors or inventors the exclusive right to their respective writings, inventions, and discoveries; and upon any bill in equity, filed by any party aggrieved in any such cases, shall have authority to grant injunctions, according to the course and principles of courts of equity, to prevent the violation of the rights of any authors or inventors secured to them by any law of the United States, on such terms and conditions as the said courts may deem fit and reasonable."

In the case of *Sullivan* v. *Redfield* (1 Paine, 441), which was decided in 1825, Mr. Justice Thompson, who in the Livingston case had sat as one of the judge of the State court, had occasion to consider the nature of the equity jurisdiction in patent

suits. "The equity jurisdiction," he said, "exercised by the
court over patents for inventions is merely in aid of the com-
mon law, and in order to give more complete effect to the pro-
visions of the statute under which the patent is granted." And
in answer to the argument that the act of 1819 gave a peremp-
tory right to an equitable remedy by virtue of the patent itself,
he said : "This act does not enlarge or alter the powers of the
court over the subject-matter of the bill or the cause of action.
It only extends its jurisdiction to parties not before falling
within it. Before this act it had been held that a citizen of
one State could not obtain an injunction in the Circuit Court
for a violation of a patent-right against a citizen of the same
State, as no act of Congress authorized such suit. This act
removed that objection and gave the jurisdiction, although the
parties were citizens of the same State. But in the exercise
of the jurisdiction in all cases of granting injunctions to pre-
vent the violation of patent-rights the court is to proceed
according to the course and principles of courts of equity in
such cases. So that the questions presented in the present case
are precisely where they would have been without this act."

The substance of the act of 1819 was incorporated into the
seventeenth section of the act of July 4, 1836, c. 357 (5 Stat.
117), so far as it related to inventors, but remained in force,
after the passage of the latter act, so far as it gave cognizance
to the courts of the United States of cases of copyright. It was
under that provision of the act of 1819 that the case of *Stevens*
v. *Gladding* arose and was decided. 17 How. 447. That was
a bill for an injunction to restrain the violation of a copyright,
and prayed for the recovery of the penalties given by the
seventh section of the act of Feb. 3, 1831, c. 16, and for gen-
eral relief. Mr. Justice Curtis, delivering the opinion of the
court, said : "There is nothing in this act of 1819 which
extends the equity powers of the courts to the adjudication of
forfeitures ; it being manifestly intended that the jurisdiction
therein conferred should be the usual and known jurisdiction
exercised by courts of equity for the protection of analogous
rights. The prayer of this bill for the penalties must, there-
fore, be rejected. The remaining question is whether there
ought to be a decree for an account of the profits. The com-

plainant has not prayed for such an account, nor have the defendants stated one in their answer; but the bill does pray for general relief. The right to an account of profits is incident to the right to an injunction in copy and patent right cases," citing *Colburn* v. *Simms*, 2 Hare, 554; 3 Dan. Ch. Pr. 1797. " And this court has held, in *Watts et al.* v. *Waddle et al.* (6 Pet. 389), that where the bill states a case proper for an account, one may be ordered under the prayer for general relief."

The seventeenth section of the act of 1836 differs from the act of 1819 in one other particular only. It makes the jurisdiction in patent causes of the court of the United States exclusive.

It was under the act of 1836 that the question arose for the first time, in *Livingston* v. *Woodworth* (15 How. 546), as to the rule for computing the profits of an infringer, upon a decree for such an account. The bill was for an injunction and account. The validity of the patent and the fact of infringement were both admitted by the defendant, who consented to a decree requiring him to account for and pay over the gains and profits made by him, during the infringement, in accordance with the prayer of the bill. The decree confirmed the report of the master, who awarded, not actual gains and profits, but such as he estimated the defendant might have made by due diligence. It was argued, in support of the decree, that where the court has jurisdiction to give the principal relief sought, it will make a complete decree, and give compensation for the past injury, as in bills for specific performance and injunction bills for waste; and that it was a correct rule to hold the party accountable, as an involuntary trustee, for what the patentee might have realized by the same exercise of the right, as a court of equity sometimes forces the character of a trustee upon an intruder, or wrong-doer, or one in possession under color of right, or who takes rents or profits belonging to another, or might have taken them, as in cases of mortgagees; but it was admitted that the case was of first impression. The decree, upon this point, was reversed. The court said: " We are aware of no rule which converts a court of equity into an instrument for the punishment of simple torts. . . . If the appellees, the plaintiffs below, had sustained

an injury to their legal rights, the courts of law were open to them for redress, and in these courts they might, according to a practice which, however doubtful in point of essential right, is now too inveterate to be called in question, have claimed, not compensation merely, but vengeance, for such injury as they could show they have sustained. But before a tribunal which refuses to listen even to any, save those whose acts and motives are perfectly fair and liberal, they cannot be permitted to contravene the highest and most benignant principle of the being and constitution of that tribunal. There they will be allowed to claim that which, *ex æquo et bono* is theirs, and nothing beyond this." p. 559. The account was, therefore, restricted to the actual gains and profits of the appellants during the time their machine was in operation.

This rule in relation to the profits recoverable in such suits was followed in *Dean* v. *Mason* (20 How. 198), which was a case of a bill for an injunction and account, in which a decree *pro confesso* had been taken. The final decree was entered, on the report of the master, for the estimated amount of profits which the defendant, with reasonable diligence, might have realized; not what, in fact, he did realize. This was held to be erroneous. The court said: " The rule in such a case is, the amount of profits received by the unlawful use of the machines, as this, in general, is the damage done to the owner of the patent. It takes away the motive of the infringer of patented rights by requiring him to pay the profits of his labor to the owner of the patent. Generally, this is sufficient to protect the rights of the owner; but where the wrong has been done, under aggravated circumstances, the court has the power under the statute to punish it adequately by an increase of the damages."

The important case of *Seymour* v. *McCormick* (16 How. 480) was decided in 1853. That was an action at law. The court below instructed the jury that the actual damages to which the plaintiff was entitled, for an infringement of a patent for an improvement in a machine, might be determined by ascertaining the profits which in judgment of law he would have made, provided the defendants had not interfered with his rights, and that the same rule applied whether the patent covered an entire machine or merely an improvement on a

machine. This instruction this court held to be erroneous, and reversed the judgment on that account. Mr. Justice Grier, in delivering the opinion of the court, referred to the rule of damages, prescribed by the acts of Congress, previously in force, stating that " experience had shown the very great injustice of a horizontal rule equally affecting all cases, without regard to their peculiar merits ; " and that it was to obviate this that the Patent Act of 1836 confined the jury to the assessment of actual damages, leaving it to the discretion of the court to inflict punitive damages to the extent of trebling the verdict. He then remarked : " It must be apparent to the most superficial observer of the immense variety of patents issued every day, that there cannot, in the nature of things, be any one rule of damages which will equally apply to all cases. The mode of ascertaining actual damages must necessarily depend on the peculiar nature of the monopoly granted. A man who invents or discovers a new composition of matter, such as vulcanized india-rubber or a valuable medicine, may find his profit to consist in a close monopoly, forbidding any one to compete with him in the market, the patentee being himself able to supply the whole demand at his own price, in which cases " the profit of the infringer may be the only criterion of the actual damage of the patentee ; " that " one who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement ; and where the profit of the patentee consisted neither in the exclusive use of the thing invented or discovered, nor in the monopoly of making it for others to use, it is evident that this rule could not apply. The case of Stimpson's patent for a turnout in a railroad may be cited as an example. It was the interest of the patentee that all railroads should use his invention, provided they paid him the price of his license. He could not make his profit by selling it as a complete and separate machine. An infringer of such a patent could not be liable to damages to the amount of the profits of his railroad, nor could the actual damages of the patentee be measured by any known ratio of the profits of the road. . . . It is only where, from the peculiar circumstances of the case, no other rule can be found that the defendant's

profits become the criterion of the plaintiff's loss. Actual damages must be actually proved, and cannot be assumed as a legal inference from any facts which amount not to actual proof of the fact." Accordingly it was held in *Corporation of New York* v. *Ransom* (23 How. 487), where the rule in *Seymour* v. *McCormick* (*supra*) was expressly approved, that in an action at law, if the plaintiff rested his case, after proof of infringement merely, he was entitled only to nominal damages. It was also applied in *Jones* v. *Morehead* (1 Wall. 155) which was a bill in equity for an injunction and an account, where a decree for a large sum as profits had been rendered against the defendant, upon an entire machine, in respect to which it appeared as matter of fact that the defendants had not infringed the patent sued on, but had admitted to the contrary in the answer. The court construed this admission by applying it to the smallest number of patented articles, and to the use of any part of the patent found to be valid, and, reversing the decree, ordered one to be entered for a " nominal sum of one dollar for profits."

In *Rubber Company* v. *Goodyear* (9 Wall. 788), which was a bill for an injunction and account, a decree for a large sum was rendered in favor of the complainants, which was affirmed on appeal. " The rule," said Mr. Justice Swayne, delivering the opinion of the court, " is founded in reason and justice. It compensates one party and punishes the other. It makes the wrong-doer liable for actual, not possible, gains. The controlling consideration is that he shall not profit by his wrong. A more favorable rule would offer a premium to dishonesty and invite to aggression. The jurisdiction of equity is adequate to give the proper remedy, whatever phase the case may assume ; and the severity of the decree may be increased or mitigated according to the complexion of the conduct of the offender."

*Mowry* v. *Whitney* (14 Wall. 620) was also a bill in equity for an injunction and account. A decree was rendered in favor of the complainant for all the profits on the manufactured article, instead of upon the patented process of manufacture, with interest added. On appeal, this court reversed the decree on that point, saying: " The question to be deter-

mined in this case is, what advantage did the defendant derive from using the complainant's invention, over what he had in using other processes then open to the public and adequate to enable him to obtain an equally beneficial result. The fruits of that advantage are his profits. . . . That advantage is the measure of profits." On the question of interest, Mr. Justice Strong, speaking for the court, said: "We add only that, in our opinion, the defendant should not have been charged with interest before the final decree. The profits which are recoverable against an infringer of a patent are in fact a compensation for the injury the patentee has sustained from the invasion of his right. They are the measure of his damages. Though called profits, they are really damages, and unliquidated until the decree is made. Interest is not generally allowable upon unliquidated damages. We will not say that in no possible case can interest be allowed. It is enough that the case in hand does not justify such an allowance."

In *Packet Company* v. *Sickles* (19 Wall. 611), which was an action at law, the rule established in *Seymour* v. *McCormick* (*supra*) was reiterated, as "the established criterion of damages in cases to which it was applicable." "In cases where there is no established patent or license fee in the case, or even an approximation to it, general evidence must necessarily be resorted to," as was said by the court in the case of *Suffolk Company* v. *Hayden*, 3 Wall. 315. "And what evidence," said Mr. Justice Nelson, in that case, p. 320, "could be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results? With a knowledge of these benefits to the persons who have used the invention, and the extent of the use by the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner by the piracy instead of the purchase of the use of the invention." He added that "a recovery does not vest the infringer with the right to continue the use, as the consequence of it may be an injunction restraining the defendant from the further use of it."

In *Packet Company* v. *Sickles* (*supra*), Mr. Justice Miller said: "The rule in suits in equity, of ascertaining by a reference to a master the profits which the defendant has made by the use of the plaintiff's invention, stands on a different principle. It is that of converting the infringer into a trustee for the patentee as regards the profits thus made; and the adjustment of these profits is subject to all the equitable considerations which are necessary to do complete justice between the parties, many of which would be inappropriate in a trial by jury. With these corrective powers in the hands of the Chancellor, the rule of assuming profits as the groundwork for estimating the compensation due from the infringer to the patentee has produced results calculated to suggest distrust of its universal application even in courts of equity."

The doctrine of this case was reiterated in *Burdell* v. *Denig* (92 U. S. 716), where Mr. Justice Miller, again delivering the opinion of the court, said: —

"Profits are not the primary or true criterion of damages for infringement in an action at law. That rule applies eminently and mainly to cases in equity, and is based on the idea that the infringer shall be converted into a trustee, as to those profits, for the owner of the patent which he infringes; a principle which it is very difficult to apply in a trial before a jury, but quite appropriate on a reference to a master, who can examine defendant's books and papers, and examine him on oath, as well as all his clerks and employes. On the other hand, we have repeatedly held that sales of licenses of machines, or of a royalty established, constitute the primary and true criterion of damages in the action at law. No doubt, in the absence of satisfactory evidence of either class in the forum to which it is most appropriate, the other may be resorted to as one of the elements on which the damages or the compensation may be ascertained."

*Littlefield* v. *Perry* (21 Wall. 205) was one where the patentee, by force of an agreement, held the legal title to the patent in trust for the complainant, in violation of which he was making use of his legal rights. It was held, upon a bill filed for an injunction and account, that it was a case under the patent laws, and the defendant was required to account for the

orofits he had made, according to the rule in *Mowry* v. *Whitney*, *supra.* The Chief Justice said, p. 230 : " Profits actually ·ealized are usually, in a case like this, the measure of un-liquidated damages   Circumstances may, however, arise which would justify the addition of interest in order to give complete indemnity for losses sustained by wilful infringements."

By the act of July 8, 1870, c. 230, Congress revised, consolidated, and amended the statutes relating to patents and copyrights. 16 Stat. 198. The fifty-ninth section renewed the provision previously in force, that damages for infringement might be recovered by action on the case, and that whenever, in any such action, a verdict shall be rendered for the plaintiff, the court may enter judgment therein for any sum above the amount found by the verdict as the actual damages sustained, according to the circumstances of the case, not exceeding three times the amount of the verdict. The fifty-fifth section is as follows : —

" That all actions, suits, controversies, and cases arising under the patent laws of the United States shall be originally cognizable, as well in equity as at law, by the Circuit Courts of the United States, or any District Court having the power and jurisdiction of a Circuit Court, or by the Supreme Court of the District of Columbia, or of any Territory ; and the court shall have power, upon bill in equity filed by any party aggrieved, to grant injunctions, according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable ; and upon a decree being rendered in any such case for an infringement, the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction, and the court shall have the same powers to increase the same in its discretion that are given by this act to increase the damages found by verdicts in actions upon the case; but all actions shall be brought during the term for which the letters-patent shall be granted or extended, or within six years after the expiration thereof."

These provisions are substantially carried into the Revised Statutes, sect. 59 of the act of 1870, being sect. 4919 of the

latter, and sect. 55 corresponding to sect. 4921 Rev. Stat., except as to the provision in respect to the limitation upon the right to sue, which is not found in the Revised Statutes. But the rights of the parties in the present suit arose while the act of 1870 was in force, and are determinable under it.

In the case of *Birdsall* v. *Coolidge* (93 U. S. 64) it is declared, in reference to the effect of the act of 1870, that "gains and profits are still the proper measure of damages in equity suits, except in cases where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the respondent;" in which event the provision is, that the complainant " shall be entitled to recover, in addition to the profits to be accounted for by the respondent, the damages he has sustained thereby."

Mr. Justice Clifford, in the opinion in this case, quotes a passage, slightly altered, from Curtis on Patents, sect. 341 *a* (4th ed.), p. 461, which, taken by itself, might seem to imply that prior to the act of 1870 the owner of a patent had the election to resort to a court of equity for the recovery of profits, or a court of law for damages, irrespective of any other relief of an equitable character; but the language of the passage is to be restrained to mean merely that the option existed to sue at law for past infringement, or seek equitable relief by way of prevention, the damages or profits following, as either jurisdiction is resorted to, each according to its kind. For if this be not so, it follows that since the passage of the act of 1870 an owner of a patent may recover, in a suit in equity, profits and damages in all cases, according to the rule above stated, without seeking any other relief whatever, the effect of which would be to give two remedies, one in equity, the other at law, merely for the recovery of damages for an injury to a legal right, an anomaly not to be found in any other branch of our jurisprudence. And manifestly, upon such a construction, the action at law would soon become obsolete, as completely as if it had been abolished by legislation. The whole force of the change in the statute consists in conferring upon courts of equity, in the exercise of their jurisdiction in administering the relief, which they are accustomed and authorized to give, and which is appropriate to their forms of procedure, the power

not merely to give that measure of compensation for the past, which consists in the profits of the infringer, but to supplement it, when necessary, with the full amount of damage suffered by the complainant, and which, if he had sued for that alone, he would have recovered in another forum, with power to increase the amount of the actual damages, as in courts of law. But as the account of profits, previously, was the incident of the suit, and not its object, so now the power to award damages and to multiply them is added as an incident to the right to an account.

But the difference between the state of the law before and after the act of 1870 finds its best illustration in a comparison between two cases, both of which were decided at the October Term, 1877, *Elizabeth* v. *Pavement Company*, 97 U. S. 126, and *Marsh* v. *Seymour*, id. 348.

In the former the bill was filed before the passage of the act, but prayed, besides an injunction, for both damages and profits. It was held that the court below had rightly decided that a decree for profits alone could be rendered, inasmuch as the jurisdiction of courts of equity to decree damages, as distinct from profits, was first conferred by the statute. Mr. Justice Bradley, delivering the opinion of the court, remarking that the general question of the profits recoverable in equity by a patentee was surrounded with many difficulties, which the courts had not yet succeeded in overcoming, said : —

"But one thing may be affirmed with reasonable confidence, that, if an infringer of a patent has realized no profit from the use of the invention, he cannot be called upon to respond for profits; the patentee in such case is left to his remedy for damages. It is also clear that a patentee is entitled to recover the profits that have been actually realized from the use of his invention, although from other causes the general business of the defendant, in which the invention is employed, may not have resulted in profits, — as when it is shown that the use of his invention produced a definite saving in the process of a manufacture. *Mowry* v. *Whitney*, 14 Wall. 434; *Cawood Patent*, 94 U. S. 695. On the contrary, though the defendant's general business be ever so profitable, if the use of the invention has not contributed to the profits, none can be recovered. The

same result would seem to follow where it is impossible to show the profitable effect of using the invention upon the business results of the party infringing. It may be added, that, where no profits are shown to have accrued, a court of equity cannot give a decree for profits by way of damages, or as a punishment for the infringement. *Livingston* v. *Woodworth*, 15 How. 5. 9. But when the entire profit of a business or undertaking results from the use of the invention, the patentee will be entitled to recover the entire profits, if he elects that remedy. And in such a case, the defendant will not be allowed to diminish the show of profits by putting in unconscionable claims for personal services or other inequitable deductions. *Rubber Company* v. *Goodyear*, 9 Wall. 788." And these general propositions, he added, will hardly admit of dispute.

Accordingly, in that case, the bill was dismissed as to the city of Elizabeth, which had infringed, because it appeared that it had made no profit from the use of the patented improvement, while a decree was rendered against the contractor, who had laid the pavement which was the subject of the patent, because he was shown to have made profits from the infringement. The municipal corporation, of course, remained liable to respond in damages in an action at law for any loss which the plaintiff could have established by proof.

The cases of *Marsh* v. *Seymour* (*supra*) arose under the act of 1870, and were bills for injunction and account. Decrees were rendered in favor of the complainant, and a reference ordered to a master to state an account of profits. In both cases, the respondents showing that they had made no profits by reason of the use of the invention, the complainant waived his claim for a recovery on that account, and decrees were rendered for damages on the basis of a license fee for the infringing machines which had been sold, and nominal damages for those manufactured but not sold. These decrees were affirmed, the court saying, Mr. Justice Clifford delivering its opinion, that " damages of a compensatory character may be allowed to a complainant in an equity suit, where it appears that the business of the infringer was so improvidently conducted that it did not yield any substantial profits, as in the case before the court."

In *Parks* v. *Booth* (102 U. S. 96), which was a suit in equity for an injunction, an account of profits and damages, under the act of 1870, a decree was rendered in favor of the complainant, and for profits and damages as found by a master. Under the head of damages there were included items for expenses of conducting the suit, being counsel fees, compensation for the complainant's time, and interest on the profits. The decree was modified on appeal, by striking out all these allowances, except that for the complainant's time, lost in attending to the suit. Interest on profits was, on the authority of *Silsby* v. *Foote* (20 How. 378), disallowed on the ground that profits in such a case are to be regarded in the light of unliquidated damages. No injunction was decreed, as the term of the patent had expired. It does not appear from the report of the case when the suit was begun, but a reference to the original record shows that the bill was filled in April, 1871, before the expiration of the term of the patent.

*Hendrie* v. *Sayles* (98 U. S. 546) was a bill in equity for an account of profits, filed after the expiration of the patent, the same patent on which the present suit is founded. It was decided upon a single point raised on demurrer to the bill, the question of jurisdiction not being noticed either by counsel or court. A decree for the complainant was affirmed on appeal.

This appears to be the only case of the kind, until the present, that found its way into this court.

*Eureka Company* v. *Bailey Company* (11 Wall. 488) is no exception to this remark; although in respect to it the observation has been made, that the injunction prayed for in that case was incidental to the account, and not *vice versa.* That, however, is a misconception; for, unless upon the ground of a difference of citizenship, the court would not have had jurisdiction to entertain the bill in that case, if it had not prayed for an injunction. For the mere purpose of enforcing the contract for the royalty, it was not a case arising under the patent laws, so as to give jurisdiction to the courts of the United States. It was because the defendant was guilty of an infringement of the complainant's patent that he was suable in equity in these courts, and to restrain that an injunction was asked until he should pay what he had promised. The object of the

suit doubtless was to collect the royalty; but it was sought by means of, and therefore as an incident to, the jurisdiction of the court, invoked for the purpose of enjoining the continuance of what, until the royalty was acknowledged and paid, was found to be an infringement.

All the acts of Congress relating to patents prior to that of 1870 contained provisions specifying the special defences which might be made in an action at law for an infringement, under the plea of the general issue, notice thereof having been previously given. The sixty-first section of the act of 1870 enumerates the several special matters thus authorized to be proved, and adds, for the first time in the history of this legislation, the clause that " the like defences may be pleaded in any suit in equity for relief against an alleged infringement, and proofs of the same may be given upon like notice in the answer of the defendant and with the like effect."

The plain and obvious purpose of this provision is to furnish appropriate modes in equity pleading for the trial of all issues, both of fact and law, relating both to the alleged infringement and the validity of the patent, without the necessity of framing special issues out of chancery for trial by jury, or sending the parties to a court of law for the trial of an action in that forum, in order to determine their legal right. It proceeds upon the idea that the court of equity having acquired jurisdiction for the purpose of administering the equitable relief sought by the bill, may determine directly and for itself, in the same proceeding, all questions incidental to the exercise of its jurisdiction, notwithstanding they may be questions affecting legal rights and legal titles.

Although this was the first statutory authority for the practice, it was rather a recognition of what had already been established than its introduction; for the practice had, in fact, originated long before, and was based upon well-known principles of equity jurisprudence. Whatever question may have existed in reference to it previously was settled in the courts of the United States by *Goodyear* v. *Day* (2 Wall. Jr. 283), a case argued by Webster and Choate, and decided by Mr Justice Grier in 1852. That learned judge on that occasion said: " It is true that in England the Chancellor will generally not grant a

final and perpetual injunction in patent cases, when the answer denies the validity of the patent, without sending the parties to law to have that question decided. But even there the rule is not absolute or universal; it is a practice founded more on convenience than necessity. It always rests on the sound discretion of the court. A trial at law is ordered by a chancellor to inform his conscience; not because either party may demand it as a right, or that a court of equity is incompetent to judge of questions of fact or of legal titles." See also *Orr* v. *Merrill*, 1 Woodb. & M. 376.

The distinction in the nature of the two proceedings, of an action at law and a suit in equity, is plainly pointed out in this section of the statute, the former as being an action for an infringement, the latter as a suit for relief against an alleged infringement. And while upon the words used in the fifty-fifth section of the act, it may be, that the jurisdiction in equity which is thereby conferred is not exhausted by the power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, yet the statute immediately says, that it is upon a decree being rendered in any *such* case for an infringement — as though that was the only one — that the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby.

It is impossible, we think, to maintain the claim that the language of this act, similar in that respect to the previous acts of 1819 and 1836, conferring jurisdiction in patent cases in equity as well as at law, was meant to obliterate the distinctions between these two jurisdictions, or even to confuse the boundaries between them, as it is alleged was done by the decision in the case of *Nevins* v. *Johnson* (3 Blatchf. 80), and perhaps in other subsequent circuit court decisions. Indeed, it is the settled doctrine of this court that this distinction of jurisdiction, between law and equity, is constitutional, to the extent to which the seventh amendment forbids any infringement of the right of trial by jury, as fixed by the common law. And the doctrine applies in patent cases as well as others. This court said in *Parsons* v. *Bedford* (3 Pet. 433), speaking

of the meaning intended by the framers of that amendment, that "by common law they meant what the Constitution denominated in the 3d article, LAW, not merely *suits* which the common law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where *equitable rights* alone were recognized and equitable remedies administered." The rule was repeated in *Fenn* v. *Holme* (21 How. 481), in this language: "In every instance in which this court has expounded the phrases, proceedings at the common law and proceedings in equity, with reference to the exercise of the judicial powers of the courts of the United States, they will be found to have interpreted the former as signifying the application of the definitions and principles and rules of the common law to rights and obligations essentially legal; and the latter as meaning the administration with reference to equitable as contradistinguished from legal rights, of the equity law as defined and enforced by the Court of Chancery in England.

It becomes necessary, therefore, to consider what support there is in the general doctrines of equity for the contention of the appellant.

It is the fundamental characteristic and limit of the jurisdiction in equity that it cannot give relief when there is a plain and adequate and complete remedy at law; and hence it had no original, independent, and inherent power to afford redress for breaches of contract or torts, by awarding damages; for to do that was the very office of proceedings at law. When, however, relief was sought which equity alone could give, as by way of injunction to prevent a continuance of the wrong, in order to avoid multiplicity of suits and to do complete justice, the court assumed jurisdiction to award compensation for the past injury, not, however, by assessing damages, which was the peculiar office of a jury, but requiring an account of profits, on the ground that if any had been made, it was equitable to require the wrong-doer to refund them, as it would be inequitable that he should make a profit out of his own wrong. As was said by Vice-Chancellor Wigram in *Colburn* v. *Simms* (2 Hare, 543), "the court does not by an account accurately measure the damage sustained by the pro-

prietor of an expensive work from the invasion of his copyright by the publication of a cheaper book," but, " as the nearest approximation which it can make to justice, takes from the wrong-doer all the profits he has made by his piracy and gives them to the party who has been wronged."

Whether a bill for an account of profits against a wrong-doer would lie, independently of other equitable grounds for the intervention of the court, is a question, as was said by Lord Chancellor Brougham in *Parrott* v. *Palmer* (3 Myl. & K. 632), " which has been oftentimes agitated, and has, perhaps, never received a clear and a general decision ; that is to say, a distinct judgment on the general proposition, with its limitations." He concluded that, " from the whole it may be collected that, although as to timber there exists considerable discrepancy, yet the sound rule is to make the account the incident and ‘ot the principal, where there is a remedy at law; but that mines are to be otherwise considered, and that as to them the party may have an account even in cases where no injunction would lie."

The supposed exception in cases of mines seems to rest upon a *dictum* of Lord Hardwicke in *Jesus College* v. *Bloom* (3 Atk. 262), that " it was a sort of trade ; " but the reference is to the case of *Bishop of Winchester* v. *Knight* (1 P. W. 406), where the bill prayed for an account of ore dug by the ancestor of the defendant, in respect to which the argument was, that being a personal tort it died with the person. The decision was that the plaintiff was not entitled; but on this point the Lord Chancellor said : " It would be a reproach to equity to say, where a man has taken my property, as my ore or timber, and disposed of it in his lifetime and dies, that in this case I would be without remedy. It is true as to the trespass of breaking up meadow or ancient pasture ground, it dies with the person ; but as to the property of the ore or timber, it would be clear, even at law, if it came to the executor's hands, that trover would lie for it ; and if it has been disposed of in the testator's lifetime, the executor, if assets are left, ought to answer it." It is plain from these observations that the assumed ground of the equity jurisdiction was the absence of any remedy at law. *Powell* v. *Aiken* 4 Kay & J. 343. It is now

clearly established in the English chancery "that a bill will not lie for an account of timber felled any more than for any other money demand, except when the account is asked as an incident to an injunction, and that when the plaintiff has no right to an injunction, he has no right to an account, and his remedy is at law alone." Per Sir Wm. M. James, L. J., in *Higginbotham* v. *Hawkins*, Law Rep. 7 Ch. App. 676.

The same rule is applied by the modern decisions in cases of mines, where, as incident to the relief sought by a bill, an account is asked of profits against trespassers. It appears that as to the mode of assessing compensation, in such suits, to an owner of coal which has been improperly worked by the owner of an adjoining mine, a different principle is applicable when the coal is taken inadvertently, or under a *bona fide* belief of title, and when it is taken fraudulently, with knowledge of the wrong. In cases of the latter description, at law, the strict rule of damages laid down in *Martin* v. *Porter* (5 Mee. & W. 351) was to charge the value of the coal without allowing any of the expenses of getting it; but in those of the former description a milder rule was applied in *Morgan* v. *Powell* (3 Q. B. 278) and *Wood* v. *Morewood* (id. 440), which was to give to the plaintiff the fair value of the coals as if the coal-field had been purchased from him by the defendant. This distinction was adopted and the latter rule applied in equity, by Vice-Chancellor Malins in *Hilton* v. *Woods* Law Rep. 4 Eq. 432), and by Lord Chancellor Hatherley in *Jegon* v. *Vivian* (Law Rep. 6 Ch. App. 742), the latter remarking that "this court never allows a man to make profit by a wrong." This rule was adopted in *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80.

The same rule applies in England in patent and copyright cases. The Vice-Chancellor Page-Wood, in *Smith* v. *London & Southwestern Railway Co.* (Kay, 408), said: "The true ground of relief in these cases is laid down in *Baily* v. *Taylor* (1 Russ. & M. 73), where Sir J. Leach, M. R., says: 'The court has no jurisdiction to give to a plaintiff a remedy for an alleged piracy, unless he can make out that he is entitled to the equitable interposition of this court by injunction; and in such case the court will also give him an account, that his

remedy here may be complete. If this court do not interfere by injunction, then his remedy, as in the case of any other injury to his property, must be at law.' Unless that primary right to an injunction exists, this court has no jurisdiction with reference to a mere question of damages." The Vice-Chancellor further observed that, as had often been stated by Lord Eldon, as the object of the court in interfering by injunction was the prevention of a multiplicity of suits, which might be rendered necessary by continued infringements of the patent, he was at a loss to see how the jurisdiction could attach or the relief by injunction be arrived at, after the expiration of the patent, unless a case were made out, of a numerous series of past infringements from which the parties were still deriving advantage. He then referred to *Crossley* v. *Beverly* (Web. P. C. 119) as a case where there was a specific ground for that relief, that the defendants had been manufacturing the patented articles, secretly and fraudulently, for the purpose of pouring into the market the articles so manufactured directly the patent should have expired. In that case the bill was filed before the expiration of the patent, and the right to sue having been thus acquired, the court extended it to restrain using the articles so manufactured after the patent had expired. "Such a case," continues the Vice-Chancellor, "of a fraudulent attempt to evade the patent might occur, as would enable the court to restrain the use of articles made in infringement of the patent and kept back until it expired, even after its expiration, and the plaintiff having thus obtained a right to the injunction, the right to an account would follow."

In the case of *Price's Pat. Candle Co.* v. *Bauwen's Pat. Candle Co.* (4 Kay & J. 727), the bill was dismissed, because the patent having expired *pendente lite*, the relief by injunction could not be granted at the hearing; but in *Davenport* v. *Rylands* (Law Rep. 1 Eq. 302), the same judge retained the bill, under similar circumstances, for the purposes of an inquiry as to damages, because the act of 21 & 22 Vict., c. 27, commonly called Cairn's Act, passed after the former decision, had altered the rule. That statute declared that in all cases in which the court has jurisdiction to entertain an application for an injunction against a breach of any covenant, contract, or agreement,

or against the commission or continuance of any wrongful act, or for the specific performance of any covenant, contract, or agreement, the same court may award damages to the, party injured either in addition to or in substitution for such injunction or specific performance, and such damages may be assessed in such manner as the court shall direct, — a provision which no doubt suggested the like extension of the jurisdiction of the court in patent cases, contained in our Patent Act of 1870. But even after the passage of Cairn's Act, it was decided by Vice-Chancellor Sir Wm. M. James, in *Betts* v. *Gallais* (Law Rep. 10 Eq. 392), that the court would not entertain a bill for the mere purposes of giving relief in damages for the infringement of a patent, when the bill had been filed so immediately before the expiration of the patent as to render it impossible to have obtained an interlocutory injunction. He characterized it as " a mere device to transfer a plain jurisdiction to award damages from the court to which that jurisdiction properly belongs, to this court."

Mr. Kerr, in his treatise on Injunctions, 41, summarizes the result of many decisions, which he cites, under this statute, as follows : " The statute did not transfer to the court the general jurisdiction of common law by way of damages, or extend its jurisdiction to cases where previously to the statute it had no jurisdiction, or could not, consistently with its rules and principles, have interfered. The statute merely empowered the court to give damages in cases involving elements or ingredients of an equitable character. If the case as presented to the court was an equitable one, so that the subject-matter of the application is properly cognizable in equity, the court had jurisdiction under the statute to entertain the question of damages. If, on the other hand, the plaintiff had no equitable right at the time of bringing the action, so that the matter has been improperly brought into equity, the statute had no application. Damages may be awarded under the statute if it appear that at the time of bringing the action there was an equitable case, although the case for an injunction fails, or although an injunction is not competent from circumstances which have occurred since the filing of the bill."

It will be observed that the British statute does not touch

the question of the account of profits by an infringer, leaving that as it stood before the passage of the act. The unavoidable inference is that damages can only be given under the act, in cases in which an account might be decreed; and that the patentee must, as it was expressly decided by the House of Lords, in *De Vitre* v. *Betts* (Law Rep. 6 H. L. 319), in all cases when he has a decree, elect whether he will have an account of profits or an inquiry as to damages, and cannot have both.     Under the act of Congress of 1870, he may recover damages in addition to the profits to be accounted for by the defendant; but as the recovery is limited by the act to the actual damages, it is manifest that the recovery of damages and profits is not intended to be double, but that when necessary the damages are to supplement that loss of the complainant which the profits found to have been received are insufficient to compensate, subject to the power of the court as to their increase, as in case of verdicts.

. This firm and indisputable doctrine of the English chancery has been recognized and declared by this court, in *Hipp* v. *Babin* (19 How. 271), to be part of the system of equity jurisprudence administered by the courts of the United States, founded not only upon the legislative declaration in the Judiciary Act of 1789, " that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law," but also upon the intrinsic distinctions between the different jurisdictions of law and equity.     In delivering the opinion of the court in that case, Mr. Justice Campbell remarked that " the practice of the courts of the United States corresponds with that of the chancery of Great Britain, except where it has been changed by rule, or is modified by local circumstances or local convenience ; " and cited the instances in which " this court has denied relief in cases in equity, where the remedy at law has been plain, adequate, and complete, though the question was not raised by the defendants in their pleadings nor suggested by the counsel in their arguments.  He then adds : " And the result of the argument is that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy,

without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury." It was contended in that case that, notwithstanding this general principle, the bill ought to be maintained, because the complainants, being minors, were authorized to call upon the defendants, who had intruded into possession of their lands, for an account as guardians, and that the Court of Chancery was better fitted to take an account for rents, profits, and improvements, and might decide the question of title as incidental to the account.

In reply to these points, Mr. Justice Campbell remarked that "there are precedents in which the right of an infant to treat a person who enters upon his estate with notice of his title, as guardian or bailiff, and to exact an account in equity for the profits for the whole period of his occupancy, is recognized." "But," he added, "in those cases the title must, if disputed, be established at law, or other grounds of jurisdiction must be shown." "Nor can the court retain the bill under an impression that a court of chancery is better adapted for the adjustment of the account for rents, profits, and improvements. The rule of the court is, that when a suit for the recovery of the possession can be properly brought in a court of equity, and a decree is given, that court will direct an account as an incident in the cause. But when a party has a right to a possession which he can enforce at law, his right to the rents and profits is also a legal right, and must be enforced in the same jurisdiction. The instances where bills for an account of rents and profits have been maintained are those in which special grounds have been stated, to show that courts of law could not give a plain, adequate, and complete remedy. No instances exist where a person who had been successful at law has been allowed to file a bill for an account of rents and profits during the tortious possession held against him, or in which the complexity of the account has afforded a motive for the interposition of the Court of Chancery to decide the title and to adjust the account."

These principles were announced in a case for the recovery of the possession of real estate held adversely, but they are of general application, and embrace, as well, the case of

torts to personalty, and infringements of patent and copy rights.

The distinct ground upon which the opposite view is presented to us in argument is, that the infringer of a patent-right is, by construction of law, a trustee of the profits derived from his wrong, for the patentee, and that a court of equity, in the exercise of its acknowledged jurisdiction over trusts and trustees, will require him to account as trustee, without reference to any other relief. And in support of this contention we are referred to passages in the judgments of this court in the cases of *Packet Company* v. *Sickles*, *Burdell* v. *Denig*, and *Birdsall* v. *Coolidge*, all of which have been already cited in this opinion, *supra*, pp. 198, 199.

But the inference sought to be drawn from the expressions referred to is not warranted. It is true that it is declared in those cases that, in suits in equity for relief against infringements of patents, the patentee, succeeding in establishing his right, is entitled to an account of the profits realized by the infringer, and that the rule for ascertaining the amount of such profits is that of treating the infringer as though he were a trustee for the patentee, in respect to profits. But it is nowhere said that the patentee's right to an account is based upon the idea that there is a fiduciary relation created between him and the wrong-doer by the fact of infringement, thus conferring jurisdiction upon a court of equity to administer the trust and to compel the trustee to account. That would be a *reductio ad absurdum*, and, if accepted, would extend the jurisdiction of equity to every case of tort, where the wrong-doer had realized a pecuniary profit from his wrong. All that was meant in the opinions referred to was to declare according to what rule of computation and measurement the compensation of a complainant would be ascertained in a court of equity, which, having acquired jurisdiction upon some equitable grounds to grant relief, would retain the cause for the sake of administering an entire remedy and complete justice, rather than send him to a court of law for redress in a second action. The rule adopted was that which the court in fact applies in cases of trustees who have committed breaches of trust by an unlawful use of the trust property for their own advantage ; that is, to

require them to refund the amount of profit which they have actually realized. This rule was adopted, not for the purpose of acquiring jurisdiction, but, in cases where, having jurisdiction to grant equitable relief, the court was not permitted by the principles and practice in equity to award damages in the sense in which the law gives them, but a substitute for damages, at the election of the complainant, for the purpose of preventing multiplicity of suits. And the particular rule was formulated, as will be seen by reference to the cases already referred to, out of tenderness to defendants in order to mitigate the severity of the punishment to which they might be subjected in an action at law for damages, and because it was thought more equitable merely to deprive them of the actual profits arising from their wrong, than to make no allowances, in estimating damages, for the cost and expense of the business in the prosecution of which they had violated the rights of the complainant. The same reason operated in the establishment of the similar rule acted upon in the cases of *Hilton* v. *Woods* and *Jegon* v. *Vivian*, already cited in a previous part of this opinion, *supra*, p. 209. The rule itself is reasonable and just, though sometimes perverted and abused. It has been constantly acted upon by the courts. But it is a rule of administration and not of jurisdiction; and although the creature of equity, it is recognized as well at law as one of the measures, though not the limit, for the recovery of damages.

The case is not within the principle, according to which, in certain circumstances, a court of equity decrees a wrong-doer to be a trustee *de son tort*, and exerts its jurisdiction over him in that character. Where a defendant has wrongfully intermeddled with property already impressed with a trust, he may be required as a trustee to account for it, as was done in the case of *People* v. *Houghtaling* (7 Cal. 348), because trust property may be followed, wherever it can be traced, into whosesoever possession it comes, except that of a *bona fide* purchaser without notice. It is the character of the property, and not the wrong done in converting or withholding it, that constitutes the wrong-doer a trustee.

Our conclusion is, that a bill in equity for a naked account of profits and damages against an infringer of a patent cannot be

sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to the patentee his standing in court; that the most general ground for equitable interposition is, to insure to the patentee the enjoyment of his specific right by injunction against a continuance of the infringement; but, that grounds of equitable relief may arise, other than by way of injunction, as where the title of the complainant is equitable merely, or equitable interposition is necessary on account of the impediments which prevent a resort to remedies purely legal; and such an equity may arise out of, and inhere in, the nature of the account itself, springing from special and peculiar circumstances which disable the patentee from a recovery at law altogether, or render his remedy in a legal tribunal difficult, inadequate, and incomplete; and as such cases cannot be defined more exactly, each must rest upon its own particular circumstances, as furnishing a clear and satisfactory ground of exception from the general rule.

The case of *Garth* v. *Cotton* (1 Dick. 183) furnishes an interesting and curious illustration of one of the excepted cases. In that case Lord Hardwicke sustained a bill in equity, in a case of waste, for an account of timber felled and sold, where there could be no injunction, in favor of a complainant unborn at the time of its commission, whose estate was a contingent remainder, supported by a limitation to trustees to preserve it, the defendant being the owner of a prior term of years, and the ultimate remainder-man in fee. The Lord Chancellor proceeded on the ground of collusion between the defendants and a nominal or imputed breach of trust on the part of the trustees to preserve the contingent remainder in permitting the wrong; and distinguished the case from *Jesus College* v. *Bloom* (3 Atk. 262), particularly on the ground that the complainant could have no remedy at law. Another instance of an exception is mentioned by Vice-Chancellor Page-Wood in the extract from his judgment in the case of *Smith* v. *The London & Southwestern Railway Co.* (Kay, 408), contained in a previous part of this opinion.

It does not appear from the allegations of the bill in the present case that there are any circumstances which would

render an action at law for the recovery of damages an inadequate remedy for the wrongs complained of ; and, as no ground for equitable relief is presented, we are of opinion that the Circuit Court did not err in sustaining the demurrer and dismissing the bill.

*Decree affirmed.*

MR. JUSTICE GRAY did not sit in this case, nor take any part in deciding it.