## HAT SWEAT MANUF'G CO. *v.* PORTER *et al.*

*(Circuit Court, D. New Jersey. April 16, 1888.)*

PATENTS FOR INVENTIONS—LICENSES—BREACH OF CONTRACT—INJUNCTION.

A bill in equity alleged that complainant licensed defendants to use the former's patents on certain terms, among which were payment of royalties, the rendering of monthly accounts, etc.; that defendants soon refused to fulfill any part of the agreement, but continued to use the patents; that they had conspired with other licensees to destroy complainant's license system, and irreparable injury would result. Defendants answered that the agreement was obtained by fraud on the part of complainant, and was therefore void. *Held,* that complainant has no adequate remedy at law, and an injunction will issue against defendants, unless they will give satisfactory bonds pending litigation.

In Equity. Motion for preliminary injunction.
*John R. Bennett, Roscoe Conkling,* and *A. Q. Keasbey,* for complainant.
*Edmund Wetmore,* for defendants.

WALES, J. The question presented for consideration is, does the bill exhibit a case for equity cognizance? The defendants insist that the complainant has an adequate remedy at law. The bill sets forth these facts: The complainant is a Pennsylvania corporation, having its general place of business in Philadelphia. The defendants are citizens of New Jersey. On the 7th of March, 1884, the complainant, being the owner of several patents, all of which relate to sweat-bands for hats or caps, the

manufacture thereof, and the machinery used in making them, licensed the defendants to use the patents, on certain terms and conditions, among which were the payment of royalties, the rendering of monthly accounts, with remittances of cash, and a stipulation that the agents of the complainant should be allowed at all reasonable times to inspect their books for the purpose of verifying their accounts, and to have free access to the premises where the patented machines were operated or stored, to verify their number and examine their condition. The defendants also covenanted not to dispute the validity of any of the patents. After accepting the license, the defendants made many thousand dozens of hat bands under the patents, paid the royalties as they fell due, and performed all of their covenants up to June 1, 1887, since which time they have refused to pay royalties, render accounts, or fulfill any part of their agreement with the complainant, although they have continued to use, and are still using, the patented machines. The complainant has issued 145 licenses, which are all in force and complied with, except those of the defendants and four other licensees, against whom similar motions are now pending. The bill further charges that the defendants have combined with certain other licensees of the complainant, and with other parties, who are infringing these patents, and have formed an association for the contribution of money to embarrass the complainant by expensive litigation, and to destroy its license system. The damages claimed for these unlawful acts are estimated at $7,500; and it is also claimed that, if the defendants are permitted to continue the violation of their agreement, the complainant will receive irreparable injury. The bill prays for a discovery and account, and for a decree for the payment of the royalties and the damage sustained, and enjoining the defendants in the mean time from using any of the inventions recited in the agreement of license. The defendants do not deny the material allegations of the bill, with the exception of the charge of combination or conspiracy, but justify their conduct on the ground that they were induced by the false and fraudulent representations of the complainant's agent to execute the agreement of license. They also contend that the object of the bill is to enforce the payment of the royalties, for which the complainant has an adequate remedy at law. It is admitted that if this was the sole object of the bill it could not be sustained; but the complainant is seeking for something more than a mere naked account. A discovery is sought for as well, and an order to compel the defendants to perform their covenants, or to abstain from the use of the patents, since such use, under all the circumstances of the case, will cause irreparable damage. The defendants assume the right to use the patented machines without compensation; a right acquired under a contract which they now repudiate. By their acts they are endangering the license system of the complainant, and, unless promptly restrained, will give encouragement to other licensees to imitate their example. Actions at law for the royalties as they fall due would not afford complete relief to the complainant. A new action would be necessary every month, not only against the defendants, but against other licensees, who are now acting in like manner, by repu-

diating their contracts with the complainant, and are still using the rights acquired under them. To refuse the injunction would lead to a multiplicity of suits, which may be prevented on a final hearing of this case. The complainant is also entitled to a discovery. These are recognized heads of equity jurisdiction. Injunctions have been granted in this class of cases on a much narrower basis than is here presented. *Woodworth* v. *Weed*, 1 Blatchf. 165; *Wilson* v. *Sherman*, Id. 536; *Goodyear* v. *Rubber Co.*, 3 Blatchf. 449; *Eureka Co.* v. *Bailey Co.*, 11 Wall. 438; *McKay* v. *Mace*, 23 Fed. Rep. 76; *Manufacturing Co.* v. *Owsley*, 27 Fed. Rep. 100; *McKay* v. *Smith*, 29 Fed. Rep. 295. The facts in the present case distinguish it from *Root* v. *Railway Co.*, 105 U. S. 189, and *Purifier Co.* v. *Wolfe*, 28 Fed. Rep. 814. An injunction should therefore be issued, unless the defendants, within 15 days after notice of the order herein entered, shall give bond with two or more sureties, to be approved by a commissioner of the court, conditioned to render monthly accounts according to the terms of their contract with the complainant, and to file such accounts, duly verified, in the office of the clerk of this court, and to pay the amount of any final decree which may be rendered against them; the penalty of the bond to be in such sum as may be agreed on by the parties, or, if they are unable to agree, as may be fixed by the court.