ASBESTINE TILING & MANUF'G Co. *v.* HEPP *et al.*

(*Circuit Court, D. Oregon.* June 28, 1889.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—ACCOUNTING.
   Under section 4921 of the Revised Statutes, where a decree is given in a suit in equity restraining the infringement of a right secured by patent, the court may also decree a recovery of the profits arising from such infringement and the damages the plaintiff has sustained thereby.

2. MUNICIPAL CORPORATION—INFRINGEMENT OF PATENT.
   Where the council of Portland authorizes a contractor to lay a sewer in one of its streets, in pursuance of a power contained in its act of incorporation, and in so doing the contractor infringes upon the patent of another for making sewer-pipe, the act being a corporate one for the benefit of the corporation, it is liable for such infringement, the same as a private corporation or person.

(*Syllabus by the Court.*)

Suit in Equity for the Infringement of a Patent.

*Albert H. Tanner*, for plaintiff.

*William H. Adams,* for defendant.

DEADY, J.   This suit is brought by the Asbestine Tiling & Manufacturing Company, a corporation formed under the laws of Washington, against V. Hepp and F. D. Ball, citizens of the state of Oregon, and the city of Portland, a municipal corporation of said state.

It is brought to restrain the defendants from using or vending certain moulds for making mortar-pipes, for which Ezra Hamilton, the inventor, on October 23, 1877, obtained a patent from the United States, for the term of 14 years, for an account of the profits arising from the making, using, and vending of said moulds, and damages for the same.

The defendants Hepp and Ball answer the amended bill, and the city of Portland demurs thereto.

It appears from the bill that the plaintiff is the assignee of this patent for this county, and that the city of Portland is authorized by its act of incorporation to lay down sewers within the corporate limits, designate the material to be used in the construction of the same, exercise exclusive control in all matters relating thereto, and to assess the cost thereof on the property benefited thereby; that the defendant, by its common council, has employed and contracted with the defendants Hepp and Ball to put down numerous sewers constructed of pipe made with said moulds, and in pursuance thereof has used a large number of said moulds and a large quantity of pipe made by means thereof, and is about to contract with them for the construction of other sewers therewith.

On the argument of the demurrer the points made in support of it were these:

(1) The city of Portland, in constructing sewers, exercises a police power for the benefit of the public health, which "in no way inures to the profit or advantage of the city in its corporate capacity," and therefore it "is not liable for the infringement of a patent in prosecuting such work."

(2) The city of Portland is not liable for profits on account of the alleged infringement, "none being realized" or "claimed by the bill."   Hence equity has no jurisdiction.

(3) The city, if liable at all, is only liable for damages, and these can only be recovered in an action at law.

By section 4921 of the Revised Statutes (section 55, act of July 8, 1870, 16 St. 206) it is provided that in cases arising under the patent laws this court shall have power to grant injunctions "to prevent the violation of any right secured by patent, and upon a decree being rendered in any such case for an infringement the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the plaintiff has sustained thereby."

Presumably the city has made no profits out of the alleged infringement; but, whether it has or not or will not, the complainant is presumably damaged thereby to the extent of the royalty or license fee usually charged for the use of the patent.

Prior to the act of 1870 damages could not have been recovered in a suit in equity for the infringement of a patent, but resort must have been had to an action at law for this purpose.

The city, like any natural person, may be enjoined from violating any right secured to the patentee in this patent, or his assigns, and the statute expressly provides that in case of a decree for an injunction to restrain the infringement of a patent the plaintiff shall be entitled to recover the damages sustained thereby.

In *Root* v. *Railway Co.*, 105 U. S. 189, the whole subject of redress in equity for the violation of a right secured by a patent is exhaustively examined by the late Mr. Justice MATTHEWS. The bill was filed after the expiration of letters patent for the profits derived by the defendant from the use of an improvement in railway car brakes, and, as there could be no further infringement after the expiration of the patent, it was not a case for an injunction, and consequently not of equitable cognizance.

In stating the conclusion of the court, Mr. Justice MATTHEWS said (page 215) "that a bill in equity for a naked account of profits and damages against an infringer of a patent cannot be sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to the patentee his standing in court; that the most general ground for equitable interposition is to insure to the patentee the enjoyment of his specific right by injunction against a continuance of the infringement."

In the case under consideration, on the demurrer to the bill, the plaintiff is entitled to an injunction against the continuance of the infringement by the city, and this gives this court, sitting as a court of equity, jurisdiction. Incidental to this, according to the rules of procedure in equity and the express language of the statute, (section 4921, Rev. St.,) the court may give the plaintiff further relief by way of the recovery of the profits made by the infringer or the damages sustained by the plaintiff.

By the act of October 24, 1882, incorporating the city of Portland, the common council thereof is authorized to open, lay out, widen, grade, and improve the streets of the city, and, by section 121 of such act, "to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer," and by subdivision 30 of section 37 of said act the council is given the power "to regulate * * * the building and repairing of sewers."

In Dillon on Municipal Corporations (3d Ed. § 966) it is said that such corporations "are liable for acts of misfeasance positively injurious to individuals, done by their authorized agents or officers, in the course of the performance of corporate powers constitutionally conferred, or in the execution of corporate duties." But, the writer adds, there is "not a little diversity of opinion as to what duties are corporate duties."

However this may be, it is certain that the state may authorize the officers of a municipal corporation to perform a duty which is not corporate in its character or purpose, and for the omission or wrong-doing of which the corporation is not, and ought not to be, liable to any one. My attention has not been attracted to any specific instance of this kind, but many suggest themselves. For instance, if the state were to author-

ize and require the mayor of the city to keep a rain-gauge or weather record in Portland, or an account of the immigrants arriving at the port, in the performance of such duties he would be serving the public at large, and not the agent of the corporation.

But where the act is a corporate one, to be performed primarily for the benefit of the corporation, the inhabitants of the municipality, it is none the less a private, corporate act, because the public at large may be incidentally benefited thereby.

What few cases there are on this subject refer to and follow the ruling in *Bailey* v. *Mayor, etc.*, 3 Hill, 531. In this case it appeared that certain "water commissioners," appointed by the state under an act of the legislature to provide the city of New York with pure and wholesome water, employed persons to build a dam across the Croton river.

The action was brought against the corporation to recover damages for injuries caused by the insufficient construction of the dam. The court held that the work was a corporate one; that the commissioners were the agents of the corporation; and that the latter was therefore liable for the injury.

In delivering the opinion of the court, Mr. Chief Justice NELSON, in speaking of the grants of power to municipal corporations for exclusive public purposes and those for private purposes, and the difficulty sometimes of distinguishing them, said:

"But the distinction is quite clear and well settled, and the process of separation practicable. To this end, regard should be had not so much to the nature and character of the various powers conferred as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political, or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc*, is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."

Certainly the purpose of the power to drain the streets of the corporation for the health and convenience of the inhabitants thereof, is quite as much a private one as that of the power to furnish them with water. Like the power to maintain fire-engines and lights, the power to drain the streets by constructing sewers therein to carry off the waste water and refuse matter is granted and intended for the benefit and emolument of the corporation,—the dwellers in the city, and not the general public, although the latter may be and is incidentally benefited thereby.

When the municipal corporation of Portland was created by the legislature, it was not contemplated that the inhabitants thereof should be left to perish in their own filth, and the place become a nuisance, and therefore the corporation is authorized, for its own benefit, to provide for the removal of its waste water and refuse matter by laying down sewers or constructing drains in its streets.

In *Ransom* v. *New York*, 1 Fish. Pat. Cas. 254, and *Bliss* v. *Brooklyn*, 4 Fish. Pat. Cas. 596, it was held that the municipal corporation was liable as an infringer for acts done in the course of the execution of its corporate

powers and duties, the patents infringed being in the one case for fire-engines and the other for an improvement in hose-couplings.

In *Elizabeth* v. *Pavement Co.*, 97 U. S. 126, it was not questioned that the corporation, having contracted with third persons to lay down a pavement on its streets, which was in fact an infringement of the pavement company's patent, was liable therefor as an infringer for profits, if any were made, and for damages, if any were sustained. But, the suit having been commenced before the passage of the act of 1870, "damages" could not be recovered therein; and, it not appearing that any profits had been made by the corporation, there were none to recover.

Nor is it material whether the council contracted for or required that the pipe to be used by the contractor should be made on the machine of the plaintiff. It is enough that it has accepted the same, or allowed the contractor to use it, without the license of the patentee or his assignee. The demurrer is overruled.