KREPLIK v. COUCH PATENTS CO.

(Circuit Court of Appeals, First Circuit. October 3, 1911.)

No. 930.

**1.** PATENTS (§ 255*)—INFRINGEMENT—COMBINATIONS.

The inventive act in a combination patent is the making of the component parts, capable of combination and fit to be united to constitute the combination, and infringement of such a patent is complete when the component parts of the combination are made or sold fitted to be put together, and intended to be put together.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 397–399; Dec. Dig. § 255.*]

**2.** PATENTS (§ 328*)—INFRINGEMENT—COMBINATION.

A permanent injunction was granted restraining defendant from directly or indirectly infringing the De Piniec-Mallet patent, No. 712,718, for a sliding bed or couch, comprising two separable metal sections, each having four legs which may be slid together, the smaller under and within the other, forming, when closed, a single, and, when open, a double, bed. *Held*, that the sale by defendant to dealers of an equal number of larger and smaller sections or cots, unconnected, but adapted and intended by both defendant and the purchasers to be combined into an infringing structure, constituted a direct infringement of the patent, and a violation of the injunction.

**3.** INJUNCTION (§ 232*)—VIOLATION—PUNISHMENT—NATURE OF PROCEEDINGS—JUDGMENT.

In a proceeding against the defendant in an equity case for contempt for violation of an injunction, the court may properly impose a fine for the benefit of the complainant, measured in some degree by the pecuniary injury caused him. Such fine is remedial, and not punitive, and does not exclude punishment of the defendant where the contempt also has a criminal aspect; and where the proceeding was by petition, separate and distinct from the original suit, and was treated by the court and both parties as a criminal proceeding, in which proof of the offense beyond a reasonable doubt was required, as well as a civil proceeding, both aspects being considered, the court may in the same proceeding impose such compensatory fine, and also a sentence of imprisonment as a punishment.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 232.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Proceeding for contempt by the Couch Patents Company against Samuel Kreplik. From the judgment, defendant brings error. Affirmed.

Francis J. V. Dakin, for plaintiff in error.

Odin Roberts (Charles D. Woodbury and Roberts, Roberts & Cushman, on the brief), for defendant in error.

Before ALDRICH, BROWN, and HALE, District Judges.

HALE, District Judge. On February 20, 1909, a final injunction was issued by the Circuit Court for the District of Massachusetts, whereby the plaintiff in error (of whom for convenience we shall hereafter speak as the defendant) was enjoined from directly or indirectly

making, constructing, using, or vending bedsteads, couches, or other devices embodying the invention of United States letters patent No. 712,718, granted November 4, 1902, to Adrian De Piniec-Mallet, and especially referred to in claims 1, 2, 3, 4, 5, 6, 7, and 12 thereof. From the specifications the scope and purpose of the invention appear to be:

"To provide an improved bed comprising a main section and a sliding or extensible section, each having a metallic fabric rigid therewith, the structure being so organized that the metallic fabric of one section will slide transversely or crosswise between a side bar and the metallic fabric of the other section, whereby the two sections are nested, and the two fabrics are in such close relation that they are nearly level when extended, the distance between the two being sufficient to permit the proper sliding of one under the other without interfering with such movement, and such sections comprising, when closed, a single, and, when open, a full-sized double bed."

The thing produced in commerce as the result of this invention is an extensible bedstead or couch, consisting of two separable bed sections or frames, which, when placed upon the market, as the case shows, are of metallic formation, each with four legs, end bars and side rails, with wire fabric attached to the end bars and stretched from end to end of each of said frames; one of the frames being a little shorter and a little lower than the other, the structural elements of each so arranged that the two sections may be nested or slid together, the smaller section under and within the larger, with its wire fabric close under the wire fabric and over the side rail of the larger. The case shows that these bedsteads are sometimes delivered by the manufacturers, nested, namely, with the two sections slid together, and the legs wired or tied to prevent them from sliding apart in transportation; and sometimes in unnested relation, leaving the purchaser to nest and slide the two sections together; that the patented couch is called in the trade a "sliding couch."

The case came before the Circuit Court upon petition by the defendant in error (hereinafter for convenience to be called the petitioner) for an attachment for contempt to be issued against the defendant. The alleged contemptuous act is substantially stated by the Circuit Court, namely, that the defendant sold and delivered to one Williams twelve single cots, and to one Meserve four single cots, unconnected and uncombined; and did not nest or combine any two of the cots sold and delivered so as to form an extensible sliding couch; and, though it does not appear that any two of said cots have been so nested or combined, it is left undisputed that six larger and six smaller single cots were sold and delivered to Williams, and two larger and two smaller single cots to Meserve; that the cots sold to Williams were capable of being at once combined into six sliding couches, and those sold and delivered to Meserve into two sliding couches; and that the larger and smaller cots referred to were in all material respects like the two sections, one larger and one smaller. Upon these facts the Circuit Court found that the sale to Meserve was of four cots in pairs, the cots of each pair adjustable as one nested sliding couch, in accordance with the first claim of the patent; that each pair was sold for use as one sliding couch; that this was known

to the defendant and Meserve; and that both of them intended this use; that the sale to Williams was of twelve cots in pairs, the cots of each pair adjustable as one nested sliding couch in accordance with the first claim of the patent; that each pair was sold for use as one sliding couch; that this was known to the defendant and Williams; that both of them intended this use; that on May 24, 1910, upon a petition similar to the one before us, the defendant was adjudged in contempt for violating the same injunction, and was fined $100. After a full hearing, the Circuit Court found that the defendant had knowingly and willfully violated the injunction; that the pretense of selling single cots, and not "sliding couches," was a mere colorable attempt at evasion on his part. The court therefore adjudged the defendant to be in contempt; and, in view of his former contempt of the same injunction, the court imposed upon the defendant a fine of $500 for the use of the petitioner, and ordered the defendant to be imprisoned for ten days. To review this judgment of the Circuit Court, the defendant has brought his writ of error. And upon this writ of error the case now comes before this court.

1. Did the Circuit Court err in adjudging the defendant to be in contempt?

The defendant says that the cot beds which he sold were ordinary articles of commerce; that he had a perfect right to sell them, although certain of them might be combined and made to infringe the patent; that there is nothing in the patent to prevent him from selling single cot beds of any form; that the cot beds sold by him to Meserve and to Williams were not arranged in a nested condition; that, unnested, they did not constitute an infringing device, but that some act was necessary to be performed to change the beds so sold from noninfringing articles to infringing articles; that the act of infringement is not performed until the two cot beds are actually assembled and nested together; that their adaptation for nesting together does not make them an infringing structure; and that, even though the cot beds sold to Meserve and Williams were sold in response to orders for "sliding couches," this fact should not induce this court to hold that a sale of single cots in an unnested condition constitutes an infringement. The defendant further says that, even if the sales to Meserve and Williams may be held to be an infringement of the patent, neither of such sales was a direct, but merely a contributory, infringement; and that the only issue raised by the pleadings was that of direct infringement.

[1, 2] The evidence clearly shows that two furniture dealers, Meserve and Williams, ordered of the defendant "sliding couches"; that the couches were delivered to them by the defendant in unassembled pairs. The Circuit Court properly found that each of these pairs of cots was sold for use as one sliding cot, and that this was known to the defendant and to the purchaser, and that both intended such use. We must hold that this constitutes an infringement of the patent. The inventive act in a combination patent is the making of the component parts, capable of combination, and fit to be united to constitute the combination. The physical putting together of the two parts is

no part of the invention. The infringement of a patented combination is complete when the component parts of the combination are made or sold, fitted to be put together and intended to be put together. The infringement in this case was clearly a direct infringement. The facts do not show a partial infringement in aid of a complete infringement. The defendant did not merely aid or contribute in effecting an infringement. He sold both parts of the combination, in a condition ready to be put together to make a completed structure. His offense contained all the elements of a direct infringement. In this circuit, in Goodyear Shoe Machinery Co. v. Jackson, 112 Fed. 148, 50 C. C. A. 159, 55 L. R. A. 692, in speaking for the Circuit Court of Appeals, Judge Colt has clearly shown the distinction between a direct and a contributory infringement. The learned counsel for the defendant has himself cited a case in which Judge Lurton has quoted the analytic definition by Judge Taft in Bullock Electric, etc., Co. v. Westinghouse Electric, etc., Co., 129 Fed. 105, 111, 63 C. C. A. 607. This statement is in exact accord with the law of this Circuit announced by Judge Colt in the Goodyear Case.

It may further be said that the injunction against which the offense was committed in the case at bar was an injunction against "directly or indirectly" infringing the patent. The learned judge who sat in the Circuit Court adjudged that the defendant violated the injunction. We find this judgment free from error, whether the defendant is held to be guilty of a direct or of a merely contributory infringement. Upon the evidence in the case, however, we have no difficulty in coming to the conclusion that the defendant was clearly guilty of a direct violation of the injunction.

2. Did the Circuit Court err in imposing a fine upon the defendant for the use of the petitioner?

[3] The defendant says that, having adjudged him guilty of contempt, the Circuit Court had no jurisdiction to order him to pay a fine for use of the petitioner; but that its action was in excess of its jurisdiction, and void.

Let us look at the precise action which is brought before us. The final decree shows that the Circuit Court did three distinct things: First, the court found that the defendant, Samuel Kreplik, had violated the injunction of the court; second, the court ordered Samuel Kreplik to pay a fine of $500 to the clerk of the court for the use of the petitioner within 10 days from the date of the decree; third, the court ordered Samuel Kreplik to be imprisoned for 10 days. The court further provided for necessary process to enforce its order.

It appears, then, that the Circuit Court provided compensation to the petitioner for the losses it had suffered by reason of Kreplik's act of contempt. This court is not called upon to pass upon the question whether or not the compensation so awarded is excessive. Questions as to the amount of compensation to the petitioner are not properly raised. While the defendant assigned as error that the Circuit Court imposed a fine in the absence of evidence showing the expenses incurred by the petitioner, he did not rely upon such assignment in his exceptions. He did not make them a part of his exceptions. Thus

the question of the reasonableness of compensation is not before us. In Merchants' Stock & Grain Company v. Chicago Board of Trade, 187 Fed. 398, 109 C. C. A. 230, the Circuit Court of the Eighth Circuit has recently considered the question in relation to what matters may be passed upon under a writ of error, and what questions may be reviewed only by appeal.

The courts of the United States recognize that the process of contempt has two distinct aspects—one criminal, to punish disobedience; and the other remedial and civil to enforce a decree of the court, and to compensate private persons. In Re Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072, it was held by the Supreme Court that, where the fine for violation of an injunction is to reimburse the party injured by the disobedience, it has not a punitive character; but, where the fine is payable to the United States, it is clearly punitive and in vindication of the authority of the court. Bessette v. Conkey, 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997. In Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, the Supreme Court has lately passed upon this question. The court clearly draws the vital distinction between proceedings for civil contempt, which are between the original parties, and proceedings at law for criminal contempt, which are between the public and the defendant. The court holds that the proper remedial relief for a disobedience of an injunction in the equity cause before it would have been to have imposed a fine for the use of the complainant, measured in some degree by the pecuniary injury caused by the act of disobedience.

The two aspects of contempt proceedings have often been before the Circuit Court in this circuit, where it has been clearly recognized that in an equity cause a fine for contempt imposed for the use of the petitioner is not a punitive fine, but merely indemnity to the petitioner for the loss occasioned to him by the offensive acts of the defendant. In the case at bar the Circuit Court, under the third paragraph of its decree, gave suitable compensation to petitioner; and, while the compensation is spoken of as a fine, it clearly is not such a fine as can be held to be punitive within the meaning of the law.

We have now considered only the question whether the Circuit Court could properly, under the circumstances of the case, impose a fine upon the defendant for the use of the petitioner, without regard to the form of proceeding. We shall later in this opinion consider the question whether the Circuit Court could properly pass upon the punitive and remedial elements in one and the same proceeding.

We have no doubt that the action of the Circuit Court in giving its remedial relief was free from error. The action of the Circuit Court in giving compensation to the petitioner was in our opinion lawful in accordance with the practice of the court in this circuit, and with the rule of the Supreme Court.

3. Did the Circuit Court err in ordering the defendant to be imprisoned for 10 days?

In the Gompers Case the Supreme Court has exhaustively considered the whole subject of contempt. The court there points out that

contempts are neither wholly civil nor altogether criminal; and that it is not always easy to classify a particular act as belonging to either of these two classes. The court there had to determine whether the case before it was one of criminal contempt; and it was compelled to give a critical examination to the pleadings, the procedure, the attitude of the parties to the case, and to all the special facts in the proceeding. The case arose upon an appeal which presented everything in the record. The court found that it was a case of purely civil contempt; but that the court below had undertaken to proceed as in a criminal case, had found guilt, and imposed sentence, without having made it clear to the defendants that they were being tried upon a criminal charge, that the defendants had been forced to testify without knowing that they were being heard upon a charge and not upon a suit. From the special circumstances of the case the court clearly showed that the defendants were not given the protection to which respondents are entitled in a case where guilt or innocence are brought in question, and where the liberty of the citizen is involved. The court showed that both parties to the controversy treated the proceeding as purely and solely civil, and not involving a criminal charge. The court clearly pointed out that in a case of doubt the mutual understanding of the parties is of controlling force, and often determines the question of whether the civil or the criminal element dominates the proceeding.

The case at bar comes before us upon a writ of error, and presents only such questions as arise under the exceptions and are stated in the assignment of errors. This contempt proceeding was distinct and separate from the original equity cause. It arose upon a petition for contempt in which the petitioners stated facts sufficient to bring before the court both the civil and criminal elements of contempt, and in which the aid of the court was invoked, both to compensate the complainant and also to vindicate its authority. The case clearly shows that the defendant had a fair and full trial on the question of criminal contempt. At the special request of the defendant himself, the Circuit Court ruled that:

"This proceeding is a criminal proceeding, reviewable in error; and the rule of evidence as to the proof of the offense beyond a reasonable doubt, including the element of criminal contempt, is applicable."

This ruling gave the defendant the clear, specific safeguard of a trial upon a criminal charge. There was a common understanding of all parties that he was having such trial. He has had his day in court at a hearing in which the criminal element dominated the proceeding; and he himself admits that he has been tried and sentenced upon a criminal proceeding, where the rule of evidence as to the proof of the offense beyond a reasonable doubt was made to apply. It is not, then, necessary to critically consider the forms of the proceeding, to find out that the defendant had the proper protection to which he was entitled in a case where a criminal charge was made against him. It is true that in the case at bar many of the different forms were present which in the Gompers Case induced the Supreme Court to hold that proceeding to be solely a civil one; but the court was pro-

viding for the ample protection of the citizen where a criminal charge is made against him. It was not undertaking to enumerate the different things which must be present in order to make a criminal proceeding. The case now before us was, in its dominant element, confessedly and unquestionably a criminal proceeding. We are not obliged to examine the mere forms, to find its character.

In our opinion the sentence of 10 days imprisonment was properly and lawfully imposed.

4. Was it error for the Circuit Court to pass upon both the punitive and remedial elements in one proceeding?

The Circuit Court imposed a punitive sentence. By its ruling it allowed the criminal element to dominate the proceeding. It also made an award of compensation for the complainant. Of this latter action the defendant complains, and says that it was error for the court to take such action. We have already discussed the award of compensation, standing by itself, and have found it to be free from error. It is our duty now to briefly consider the question presented by the Circuit Court having taken action upon both the punitive and civil aspects of the case in one proceeding, although there may be doubt whether this question fairly arises upon this writ of error.

In discussing the action of the court upon the criminal side we have found that the mutual understanding of the parties was of great and, perhaps, determining force. Here again, upon the remedial side, the understanding of the parties is of great moment. The record shows that, while the defendant requested the court to rule that the case was a criminal one, the defendant also requested rulings which pertained simply and only to the civil side of the case. It appears then that both parties assumed that, while the civil rights of the parties were involved, the court was asked to proceed further to vindicate its authority. The Circuit Court made its two awards, its compensatory award and its punitive award, in one proceeding. In doing so it followed the practice of the courts in this circuit and in other circuits. This practice had no less a sanction than that of Judge John Lowell, and of Judge Nelson in Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810, 813, where the court in this circuit held that the process of contempt had two distinct functions, one criminal to punish disobedience, and the other civil and remedial; that in patent causes the practice has been to combine the two under a proper proceeding, and to order punishment if it is thought proper, and to indemnify the plaintiff if it is thought proper, or to do both if justice requires; that in patent causes it has been usual to embrace the public and the private remedy in one proceeding. This has been held to be the proper practice by Mr. Justice Miller in Re Chiles, 22 Wall. 157, 168, 22 L. Ed. 819.

In the Gompers Case the court has nowhere said that this practice of the several circuits in patent causes is improper or illegal. Under the principles announced in that case, it must, of course, appear in a cause in equity that, before imposing a sentence for criminal contempt, the court distinctly gave the defendant his day in court and allowed him a full and fair hearing upon a criminal charge. In that case the Supreme Court recognizes that the practice with reference

to contempt proceedings has been unsettled. It does not condemn the practice of the Circuit Court in the several circuits in equity causes in passing upon the punitive and civil aspect of the case in one proceeding. It does, however, hold with great force and clearness that a citizen should not be compelled to face a criminal charge without being fully advised that he is facing such charge. We do not find that the Supreme Court has ever said that any particular form of proceeding is required, providing the defendant is left in no doubt as to what charge is made against him. In the Gompers Case the court further points out that, in United States Revised Statutes, § 725 (U. S. Comp. St. 1901, p. 583), Congress has declared the power which already inhered in courts to punish contempts of their authority. It seems clear that by that statute the Congress did not undertake to limit the courts in the rights which they already possessed to act promptly and independently in any competent proceeding for the purpose of enforcing their judgments and punishing disobedience. The Supreme Court has long since taken the view that such statutes as the one in question are legislative assertions of this right of courts; that this right is incidental to the grant of judicial power, and could have been exercised without the aid of the statute; that such legislative grant of power can be considered either as an instance of abundant caution or a legislative declaration that the power of punishing for contempt shall not extend beyond its acknowledged limits of fine and imprisonment. Anderson v. Dunn, 6 Wheat. 204, 227, 5 L. Ed. 242; Bessette v. Conkey, 194 U. S. 327, 24 Sup. Ct. 665, 48 L. Ed. 997. In Re Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072, the Supreme Court further said that, where a court is proceeding in vindication of its authority, this element dominates the proceeding, and is reviewable by the Circuit Court of Appeals on writ of error. It is clear, then, that in a proceeding where both the remedial and punitive elements are brought before the court the criminal element must control. But in saying that the criminal element dominates the proceeding the Supreme Court does not say that such domination excludes the remedial element from being considered, or prevents a judge in a case like the one before us from vindicating the court's authority by punitive action, and at the same time applying remedial relief.

In the case at bar the Circuit Court gave the defendant a full hearing upon all the civil and remedial aspects of the case at the same time that it gave him a trial upon the charge for criminal contempt. The defendant fully understood that he was being tried upon the remedial aspects of the case as well as upon a criminal charge. He asked for rulings touching both aspects of the cause. There was no necessity for the Circuit Court to delay the administration of justice by dividing the two elements, and insisting upon separate proceedings in each element. If there had been such necessity, the court might have proceeded with the remedial side of the case, and have then granted a motion to show cause at a further hearing why the defendant should not be tried upon the charge for criminal contempt. But in the proceeding before it the Circuit Court found that, upon a proper petition,

upon ample notice, and with a full understanding, the parties might properly be heard upon both elements, and it allowed the criminal element to dominate the proceeding. Under the principles of the Gompers Case, and under the prevailing practice of this Circuit, we find no error in the action of the Circuit Court.

The judgment of the Circuit Court is affirmed.