KRENTLER–ARNOLD HINGE LAST CO. v. LEMAN et al.

No. 2525.

Circuit Court of Appeals, First Circuit.
March 10, 1931.

On Rehearing June 29, 1931.

ANDERSON, Circuit Judge, dissenting.

See, also, 24 F.(2d) 423; 300 F. 834.

Robert Cushman, of Boston, Mass., and P. R. Pocock, of Detroit, Mich. (Otto Barthel, of Detroit, Mich., on the brief), for appellant.

Ellis Spear, Jr., of Boston, Mass. (Eiffel B. Gale and Edward N. Goding, both of Boston, Mass., on the brief), for appellees.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a final decree of the District Court for Massachusetts of August 20, 1930, on a petition and motion to show cause why the Krentler-Arnold Hinge Last Company should not be held in contempt for the violation of a permanent injunction issued against it by the District Court November 26, 1926, in an equity suit there brought by the Krentler-Arnold Company against J. Howard Leman, administrator, and the George E. Belcher Company, defendants-counterclaimants, in which injunction it was provided that the Krentler-Arnold Hinge Last Company "shall not, directly or indirectly, make or cause to be made, use or cause to be used, sell or cause to be sold lasts embodying or containing the invention covered by claims 1, 2, 3, 4, 6 and 7 of Letters Patent of the United States No. 1,195,266, issued August 22, 1916, to Otto A. Peterson, and any substantial or material part thereof, or any substantial equivalent or colorable imitation thereof." The Peterson patent is the property of the complainants in the contempt proceedings, who are the counterclaimants in the equity suit.

In these contempt proceedings, by interlocutory decree of September 23, 1929, the Krentler-Arnold Company was found guilty of civil contempt; that the complainants were entitled to equitable relief and should recover, by way of an award, the profits made by the Krentler-Arnold Company in violating the injunction; and that the respondent also should pay the complainants a further sum sufficient to compensate them for their expenses in these contempt proceedings, including the complainants' counsel fees and the usual costs; and a reference to a master for the purpose of determining these matters was ordered.

In the final decree, the master having reported, after repeating the findings made in the interlocutory decree, it was decreed that the complainants recover for infringement of the Peterson patent the sum of $39,576.26, being the profits made by the Krentler-Arnold Company from the sale of its infringing device; also $6,102.72 as counsel fees for services rendered from October, 1928, to the end of April, 1930, in the prosecution of the contempt proceedings; also $389.15 for expenses; amounting in all to $46,068.13, with interest thereon from June 4, 1929 (the date of the filing the contempt proceedings) to the date of the entry of final decree (August 20, 1930) at the rate of 6 per centum per annum, amounting to $3,224.76, and making the total sum payable $49,292.89.

The Krentler-Arnold Company is a Michigan corporation, having its place of business at Detroit, Mich. It manufactures hinges for shoe lasts and sells them to the manufacturers of shoe lasts, who sell the lasts to the shoe manufacturers. It has no place of business in Massachusetts; it manufactures its hinges or links in Detroit, and, so far as appears in these contempt proceedings, has committed no acts of infringement in Massachusetts.

The Belcher Company is a Massachusetts corporation and Leman, administrator, is a citizen of that state. The Belcher Company is a manufacturer of shoe lasts, and makes and uses its own hinges under the Peterson patent No. 1,195,266. There is no direct competition between the two companies.

The final decree in the equity suit was entered March 1, 1928. The term of court at which this decree was entered ended later in the same month. The petition and motion for order to show cause in the contempt proceedings were filed in the equity suit June 4, 1929, and the order to show cause was entered on the same day. The service directed and the only service that could be had

in the Massachusetts district was by sending copies of the petition, the motion to show cause, and the order to show cause, together with the supporting affidavits of one Smith and one Southworth, by registered mail to the Krentler-Arnold Company at Detroit, and by serving the same papers upon James R. Hodder at Boston, who had been the attorney for the Krentler-Arnold Company in the equity suit. At the time of the service on Mr. Hodder his name appeared on the record in the equity suit as counsel and at that time had not been withdrawn, if that was necessary to render the purported service upon him of no avail.

On or before the 15th day of July, 1929, the date set for the hearing on the petition for contempt, Mr. Cushman entered a special appearance for the Krentler-Arnold Company for the sole purpose of objecting to the jurisdiction of the court, and filed a motion to dismiss the contempt proceedings for lack of jurisdiction. This motion was overruled, subject to exception. Without waiving the objection to the jurisdiction, the petition for contempt was then heard on the supporting affidavits of the complainants, counter affidavits of the Krentler-Arnold Company, and reply affidavits of the complainants, resulting in the decree of August 20, 1930, above spoken of.

█ The contempt proceedings, filed in the equity case, were entitled as of that case, and, while they asked for punitive as well as remedial relief, the proceedings were treated by counsel for the respective parties and by the court as only asking for remedial relief. In other words, the allegations and prayer for punitive relief were disregarded and treated as surplusage. And the court, in its final decree, awarded nothing in the way of a penalty, but only by way of remedial relief. The contempt proceedings, therefore, are to be regarded and treated as proceedings in civil contempt, for such was the mutual understanding of the parties throughout the trial. Kreplik v. Couch Patents Co. (C. C. A.) 190 F. 565; Mitchell v. Dexter (C. C. A.) 244 F. 926.

Although the proceedings for contempt were civil in nature and were entitled and filed in the equity suit, the Krentler-Arnold Company contends: (1) That inasmuch as the infringing device here complained of is not the same article held to have infringed the Peterson patent in the equity suit, and the term had expired at which the decree in that suit was entered, and the damages and profits awarded by that decree had been satisfied, an independent suit in equity and a reinvestigation and consideration of the scope and vitality of the claims of the Peterson patent were necessary to determine whether the present device, a so-called sliding hinge, infringed; and that this properly could not be done in a proceeding for civil contempt. The reason underlying this contention apparently is that, if a new and independent suit in equity were necessary, it would have to be brought in the District of Michigan, where the Krentler-Arnold Company is incorporated and does business, for there alone could personal service be had upon that company.

Its second contention is that, if proceedings for civil contempt are, under the circumstances of this case, proper, the District Court was without jurisdiction to entertain the same, as no personal service thereof was had on the Krentler-Arnold Company in the District of Massachusetts; that, the term of court at which the final decree in the equity suit was entered having expired, and the decree, so far as it awarded compensation, having been satisfied, the power of the District Court over that decree had ceased, the parties had been discharged, and the court had no jurisdiction over the Krentler-Arnold Company, in the absence of personal service upon it within the District of Massachusetts.

█ As to the first contention, it seems to be fairly clear from the decided cases that "whether or not the different structure made by the defendant [the Krentler-Arnold Company] after being enjoined according to said final decree also infringed said patent [the Peterson patent] was a question with which the District Court might deal according to various methods, either of which it was at liberty to select in its discretion" (National Metal Molding Co. v. Tubular Woven Fabric Co. [C. C. A.] 239 F. 907, 908); and that, if the court below regarded it as "really a doubtful question" whether the new device or structure was an infringement or not of the claims of the Peterson patent, the infringement of which was enjoined in the equity suit, it could, in its discretion, have directed that the complainants bring a new suit in equity against the Krentler-Arnold Company for the alleged infringement (California Artificial Stone Paving Co. v. Molitor, 113 U. S. 609, 618, 5 S. Ct. 618, 28 L. Ed. 1106). On the other hand, if it regarded the new structure as a clear infringement of the claims of the Peterson patent, the infringement of which was enjoined, or merely a colorable

departure therefrom, it could, in its discretion, direct the parties to proceed in the contempt proceedings already brought. Kreplik v. Couch Patents Co. (C. C. A.) 190 F. 565.

In this case the District Court adopted the latter alternative. The hearing was had, as above pointed out, on affidavits. But before the trial began the Krentler-Arnold Company, in addition to presenting its case on affidavits, was given the opportunity "to put in expert evidence," but declined to do so, stating that "it preferred to proceed on the present contempt record if we proceed on the contempt order," meaning on the affidavits filed in the contempt proceedings.

■ In its affidavits the Krentler-Arnold Company set up a number of patents as anticipations of the Peterson patent, including therein patent No. 1,094,153, issued April 21, 1914, to W. A. Krentler, which it had previously set up as an anticipation of the Peterson patent in the original equity suit; it also set up a number of other patents not previously set up as anticipations in the original equity suit, and undertook to try anew the scope and validity of the claims of the Peterson patent. The District Court, however, had before it the record and proceedings in the original equity suit, including the decree in that suit. The proceedings in that suit disclosed that the scope and validity of the claims here in question were put in issue in the original equity suit and actually tried; and that they were held not to be anticipated, but valid as drawn. In other words, that they were not too broad in view of the prior art as presented and litigated in that case. The parties to that suit were the same as in the present proceedings, and, as the scope and validity of the Peterson claims here in issue were put in issue and actually tried and determined in that suit, the decree in that suit determining those issues is as evidence conclusive in these proceedings as to the scope and validity of the claims. Walter J. Rancourt v. Panco Rubber Co., 46 F.(2d) 625, decided February 11, 1931, and cases there cited.

As the decree in the original suit, as between these parties, conclusively established the validity and scope of the Peterson claims, nothing remained for the District Court to determine but the question whether the new device (the sliding link) of the Krentler-Arnold Company read upon and infringed any of the claims of the Peterson patent, the scope and validity of which were determined in the original equity suit, and the infringe-

ment of which, by any substantial equivalent or colorable imitation thereof, was there enjoined.

■ It is clear that the new device answers in every respect the provisions of claims 2, 4, 6, and 7 of the Peterson patent; and that the question of infringement is not doubtful or even merely colorable, but certain. We are therefore of the opinion that the District Court did not err or abuse its discretion in entertaining the contempt proceedings and ordering the parties to trial thereon.

■ The second contention presents a question of first impression in this court, and the briefs and arguments of counsel have lent little or no aid to its solution. However, after a careful examination, the logic and reason of the situation seems to warrant no other answer than that the court had jurisdiction of the parties in the contempt proceedings.

■ It is undoubtedly true that in the federal courts the power of the court, on motion, to alter, modify, amend, or revoke its judgments, except as to clerical errors, ends with the term at which the judgment is entered, although it retains power later to see that its judgment is executed. Schell v. Dodge, 107 U. S. 629, 2 S. Ct. 830, 27 L. Ed. 601; Casey v. Sterling Cider Co. (C. C. A.) 15 F.(2d) 52; Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; Brooks v. Railroad, 102 U. S. 107, 26 L. Ed. 91. It is also true that, while the federal courts of equity are for certain purposes always open (Equity Rule 1 [28 USCA § 723]), the same rule as to the power of the court over its decrees is applied as in the case of judgments in a court of law, viz., that, after the term at which the decree is entered, the power of the court, on motion, to alter, amend, or revoke it, except as to clerical errors, has ceased. McGregor v. Vermont Loan & Trust Co. (C. C. A.) 104 F. 709; E. G. Staude Mfg. Co. v. Labombarde (C. C. A.) 247 F. 879; Hart v. Wiltsee (C. C. A.) 25 F.(2d) 863, and cases there cited; United States v. Trogler (C. C. A.) 237 F. 181.

Under the English practice the power of the court ceased when the final decree was enrolled, irrespective of the terms of court. Until the decree was enrolled and thereby became a record, it could be altered by the court that made it upon motion or petition, but not after enrollment. In a great majority of the states and, it would seem from the decisions of the Supreme Court, in the federal courts, the doctrine of enrollment is worked out by treating decrees as enrolled at the end of the

term. Wetmore v. Karrick, 205 U. S. 141, 150, 27 S. Ct. 434, 51 L. Ed. 745; Goddard v. Ordway, 101 U. S. 745, 750, 751, 25 L. Ed. 1040; 21 C. J. p. 706, § 874.

But in this proceeding no attempt is being made to alter, amend, or vacate the decree in the original equity suit, after the term at which it was entered. It is a proceeding to enforce the execution of that decree in so far as it granted a permanent injunction. It may be conceded that, as to the balance of the decree, execution has been had; but, so far as the question concerns the execution of the permanent injunction, the decree has not been satisfied or the parties dismissed from the control and jurisdiction of the court. If this were not so, the injunction granted against the Krentler-Arnold Company, a non-resident corporation, would at the end of the term at which the decree was entered become an empty thing. On the contrary, logic and reason lead to the conclusion that, as to the enforcement of the decree and so long as any part of it remains open for enforcement, the parties are before the court and subject to its jurisdiction; and we think the decided cases, where this matter has been considered, lead to this result.

Pitt v. Davison, 37 N. Y. 235, was a civil contempt proceeding. An action (bill in equity) had been brought by the plaintiff against Joseph Davison for specific performance of a contract by which he agreed to convey certain premises to the plaintiff. A judgment or decree was rendered adjudging the plaintiff entitled to specific performance of the contract and directing another Davison (the defendant in the contempt proceeding and to whom Joseph Davison had fraudulently, as against the plaintiff, conveyed said premises) to convey them free from any incumbrance which he had put upon them.

The Davison to whom the land had been transferred was personally served in the equity suit or action with a copy of the judgment and required to appear before a referee appointed by the court to make the conveyance under the direction of the referee. He did not appear, but his counsel appeared and offered to read an affidavit excusing his non-compliance with that part of the judgment which required him to convey, setting out that subsequent to the contract of sale to the plaintiff, but prior to the commencement of the suit for specific performance, he had mortgaged the property for $5,000, that the mortgage had been foreclosed, the premises sold, and he was unable to convey the premises to the plaintiff. The referee refused to receive the affidavit as an excuse and demanded compliance with the judgment, which was refused, and he reported the refusal to the court and the reason therefor. The final judgment or decree in the equity action was entered in May, 1856. On December 9, 1857, the plaintiff obtained from a judge of the court, in which the equity action was brought, an order requiring Davison to show cause why an attachment should not be issued against him and he be punished for his alleged contempt in not having conveyed the property. This order to show cause was founded on the judgment in the equity action and the proceedings had thereon, and contained a direction that it be served on the defendant's attorney. It was so served, but no service was made on the defendant personally. At the return term named in the order, the court adjudged the defendant guilty of contempt of court in willfully neglecting and refusing to comply with the terms of the judgment or decree and ordered him committed to jail until he should comply with it. A precept issued, and Davison was arrested and committed to jail.

He then made a motion to set aside the order under which he was committed and to be discharged from imprisonment on the ground that he had no personal knowledge of the order to show cause until after the granting of the order directing him imprisoned. Counter affidavits were introduced, one showing that a similar order to show cause had been previously issued, and that after diligent search the officer was unable to make personal service thereof, and also controverting the facts stated in the defendant's affidavit bearing on his want of knowledge of the order to show cause. This motion was denied at a special term of the court, and at a general term, on appeal, the order denying the motion was reversed and the defendant discharged from imprisonment. From that order an appeal was taken to the Court of Appeals. The question was whether personal service upon the defendant of the order to show cause, with the affidavits upon which it was granted, was necessary. The court below at the general term had held that personal service was indispensable.

The Court of Appeals pointed out, however, that this was not a proceeding to punish for criminal contempt, but was a proceeding for contempt to enforce a civil remedy; that, where the proceeding is for civil contempt, "the party in default has already had the opportunity of contesting his liability to perform what the proceeding seeks to compel

him to perform, and such proceeding is, in effect, but an execution of the judgment or order against him."

The court further said: "In the case at bar it is correct, I think, to say that the proceeding was one taken in the action. The judgment remained unexecuted, and the court was proceeding, in the mode prescribed by the statute, to execute its judgment. The order to show cause provided for by the statute, in the absence of any statutory provision to the contrary, was, then, governed by the practice of the court in regard to orders to show cause, both in respect to its service and the further proceedings upon it. That, according to such practice, an order to show cause may be served upon the attorney of the party, will not be denied. Indeed, that is the mode of service of all papers in the action prescribed by the Code, except the summons or other process, or any paper to bring a party into contempt. Code, §§ 417, 418. The papers in this case which brought the party into contempt, were the certified copy of the judgment and the summons and underwriting of the referee, requiring the defendant to appear before him and make the conveyance. These were personally served, and the defendant, by his refusal to comply with them, was brought into contempt."

As to the service of the order to show cause, the court said: "The order to show cause is, in effect, but a notice of motion, and according to the practice of the court may ordinarily be served upon the attorney of the adverse party. Although in this case the judgment was entered in May, 1856, and the order to show cause was made and served on the defendant's attorney on the 9th of December, 1857, yet, inasmuch as it appears that the defendant had avoided the service of a prior order to show cause, and that, after service of the second order by the direction of the court upon the attorney, and before the granting of the order on which the defendant was arrested and imprisoned, he consulted with his said attorney, and has not denied that the attorney was authorized to appear for him and oppose the granting of the order for his arrest and imprisonment, as he did appear, it must be clear that the attorney is to be regarded as the defendant's attorney, when the service was made, and that the service of the order to show cause was in all respects sufficient."

And, continuing, the court said: "A further ground for the decision of the General Term, put forth in the opinion, is, that inasmuch as the defendant was never personally before the court in this matter, the court had no jurisdiction of his person, and therefore the order for his arrest and imprisonment was unauthorized and void. If the proceeding is to be regarded as one in the action, as I have endeavored to show it is, then clearly this ground is not well taken. The court having obtained jurisdiction of the person of the defendant in the action, retains that jurisdiction for all purposes of enforcing the judgment, until its requirements are fully performed and executed."

In Merrimack River Savings Bank v. Clay Center, 219 U. S. 527, 31 S. Ct. 295, 296, 55 L. Ed. 320, Ann. Cas. 1912A, 513, the plaintiff brought a bill in equity in the federal Circuit Court for the District of Kansas claiming to be a creditor of the Clay Center Light & Power Company by bonds secured by a mortgage on the light and power company's plant, etc., against the city of Clay Center, the light and power company, and certain individuals. It was alleged that the light and power company owned and conducted a light and power plant at Clay Center under a perpetual franchise authorizing it to place and maintain a line of poles and wires upon the streets of the city; that the city, claiming that the franchise had expired, had, through its council, of which the individual defendants were members, required the light and power company to remove the poles and wires, and that the officials named as individual defendants were threatening to cut down and destroy its poles and wires, etc., to its irreparable damage in the loss of its security. A temporary injunction issued restraining the destruction of the poles and wires. The bill was dismissed for want of federal jurisdiction and an appeal was taken to the Supreme Court, but the injunction was continued pending the appeal.

In the Supreme Court the appeal was dismissed for want of jurisdiction, but before its mandate issued or could issue, and pending an application for rehearing, certain of the defendants to the appeal cut down and destroyed the poles and wires. The plaintiff then petitioned the Supreme Court, and, after setting out the above facts, alleged that the defendants destroyed the poles and wires knowing that the appeal was pending, and that the Supreme Court had not lost control of the controversy, and that no mandate had issued. The prayer was that the defendants be cited and required to appear and show cause why they should not be proceeded against for contempt. Such a rule was made, and the defendants appeared and answered.

They also moved to discharge the rule because the petition failed to allege that the defendants had violated any injunction or mandate of the Supreme Court, on the ground that the injunction issued pending the appeal was the injunction of the Circuit Court, and that its violation was only cognizable in that court; and, second, if that be so, the petition failed to show facts constituting contempt of the Supreme Court.

It was held (1) that the Circuit Court had power to continue the injunction in force pending appeal; (2) that "plainly, the effect of continuing the injunction operated to continue in the circuit court such jurisdiction over the subject-matter of the litigation and of the parties as to enable it to preserve the status quo pending the appeal, including power to take cognizance of a violation of its injunction"; and (3) the court expressed the opinion, although it did not decide the question, that a violation of the injunction was also a contempt of the appellate jurisdiction of the Supreme Court.

In this case, not only had the term of the Circuit Court ended at which the decree granting the injunction was made, but, at the time the alleged contempt took place and the contempt proceedings were brought, the case was in the Supreme Court on appeal, and it was held that the Circuit Court in which the injunction was pending had "such jurisdiction over the subject-matter of the litigation and of the parties as to enable it to preserve the status quo pending the appeal, including power to take cognizance of a violation of its injunction."

In Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, the range company had brought a suit in equity against Gompers, Mitchell, and Morrison in the Supreme Court for the District of Columbia, and, on March 23, 1908, obtained a permanent injunction restraining them from conspiring, agreeing, or combining in any manner to restrain, obstruct, or destroy the business of the complainant, etc. From this final decree the respondents appealed to the Court of Appeals for the District, and, while the case was pending there, but before a decision had been reached, the Buck Stove & Range Company began contempt proceedings in the Supreme Court for the District by filing a petition therefor in the equity suit. All of the record in the original cause, including the testimony, was made a part of the petition. The petition set out publications charged to be violations of the temporary injunction of December 23, 1907, and other publications alleged to be violations of the final decree and injunction of March 23, 1908.

The Supreme Court of the District, on December 23, 1908, found the respondents guilty of contempt, they having disobeyed the plain mandates of the injunctions, and ordered them imprisoned in jail. From that decree the respondents appealed to the Court of Appeals for the District. On March 26, 1909, the Court of Appeals rendered a decision in favor of the Buck Stove & Range Company on the appeal from the decree of March 23, 1908, in the equity case, and entered a decree in its favor, modified somewhat from that of the Supreme Court. From the decree of the Court of Appeals in the equity case, both parties appealed to the Supreme Court of the United States.

When the decree of the Supreme Court of the District in the contempt proceeding came on for hearing in the Court of Appeals, the Buck Stove & Range Company moved to dismiss the appeal, claiming that it was a criminal proceeding and should have been brought up by writ of error. The respondents, however, contended that it was a part of the equity case and properly removable on appeal. The Court of Appeals held that the proceeding was for criminal contempt, and affirmed the judgment or decree of the Supreme Court of the District. From that judgment or decree the respondents applied for and obtained a writ of certiorari to the Supreme Court of the United States.

In the Supreme Court of the United States it was held that the contempt proceedings were for civil contempt in the original equity proceeding. Having so held, that court must have been of the opinion, although the term at which the final decree in the equity case was entered had ended and an appeal had been taken therefrom to the Court of Appeals for the District when the contempt proceedings were filed in the Supreme Court for the District, that the original equity suit was still pending in that court so far as the power of the court over the execution of the permanent injunction and the punishment of any infraction of it were concerned, for otherwise it could not have regarded the contempt proceedings for a violation of that injunction as being in the original equity proceeding, if the equity suit had ceased to exist after the term at which the final decree in it was entered had ended.

It seems clear that the Supreme Court of the United States must have regarded the permanent injunction issued in the Supreme

Court of the District as operating to continue in that court "such jurisdiction over the subject-matter of the litigation and of the parties as to enable it to preserve the status quo pending the appeal, including power to take cognizance of a violation of its injunction," as it held in Merrimack River Savings Bank v. Clay Center, supra. See, also, Wilson v. Calculagraph Co., 153 F. 961 (1st Cir.).

So, in the instant case, the permanent injunction made a part of the final decree in the original equity suit in the District Court for Massachusetts, operated, even after the close of the term at which it was entered, to continue in that court such jurisdiction over the subject-matter of the litigation and of the parties as was necessary for it to retain power over and take cognizance of a violation of its injunction; which includes power to cause notice to be given the defendant such as the District Court should consider reasonable and necessary to notify and apprise it of the filing of the petition for contempt in the original equity proceeding.

Inasmuch as the District Court had jurisdiction over the subject-matter and the parties to the equity suit, in which the contempt proceedings were filed, for the purpose of protecting and enforcing its injunction, the only thing requisite to its proceeding to a hearing and judgment in the contempt proceedings was notice to the defendant of the petition and motion to show cause, so that it might be present at the hearing and take such action with reference thereto as it deemed proper. Notice in this case was brought to the attention of the Krentler-Arnold Company in two ways: One, by serving the requisite papers upon Mr. Hodder, then counsel of record in the equity suit; and, second, by mailing such papers to the Krentler-Arnold Company at Detroit. There is no question but that Mr. Hodder notified the Krentler-Arnold Company of the receipt of the papers served upon him, and no question about the receipt by the Krentler-Arnold Company of the papers that were mailed to it, and that it had full notice of the petition and motion for contempt in the equity suit. In fact it appeared and contested the matter. It is true that its appearance was special, but the court had jurisdiction over the subject-matter and the parties, and, the defendant having received actual notice, there was no basis for a special appearance.

If nothing further appeared than that the papers were served upon Mr. Hodder, it might be regarded as a close question whether the District Court would have had authority to proceed to judgment in the contempt proceeding; that is, whether by reason of the final decree and the close of the term at which it was entered the authority of the attorney of record had terminated, so that notice could not properly be served upon him for the defendant. It would seem, however, that his authority as attorney of record did not then terminate, for the protection and enforcement of the permanent injunction, embodied in that decree, still vested the court with jurisdiction over the subject-matter and the parties in the equity suit, and that his authority continued, so far as the service of notice of a violation of the injunction was concerned, the same as it would have had the decree in the equity suit been interlocutory, not final, granting an injunction. But we do not find it necessary to decide that question in view of the fact that the defendant otherwise had actual notice of the petition and the motion to show cause, filed in the equity suit.

The Krentler-Arnold Company also contends that the District Court was without authority to decree remedial relief except as a fine; and that, when imposed as a fine, the only remedy for the enforcement of its payment is by committing the defendant to jail until it is paid. The defendant is a corporation. If the payment of money awarded as remedial relief in the character of a fine can only be enforced against it by imprisonment, the power of the court in the execution of such a decree would be practically helpless. In such a situation we think the court may properly issue an execution for the collection of the fine as in the case of a money judgment or decree. See Equity Rule 8 (28 USCA § 723), first sentence.

It may not be amiss to say that the injunction was not simply against the manufacture, use, or sale of the old infringing device complained of in the equity suit, or one colorably like it, as the Krentler-Arnold Company contends and would seem to think, but against the manufacture, use, or sale of an article "embodying or containing the invention covered by claims 1, 2, 3, 4, 6 and 7 * * * and any substantial or material part thereof, or any substantial equivalent or colorable imitation thereof."

But we are of the opinion that the District Court went far afield and exceeded its authority in decreeing that the complainants recover profits made by the respondent by the infringement of the letters patent. In Gompers v. Buck's Stove & Range Co., supra, and Kreplik v. Couch Patents Co., supra, 190 F. at page 569, it was pointed out

that the proper remedial relief for the disobedience of an injunction in an equity case is to impose a "fine for the use of the complainant, measured in some degree by the pecuniary injury caused by the act of disobedience." In other words, that the amount of the fine or remedial relief is to be governed largely by the pecuniary damage or injury which the act of disobedience caused the complainant. This pecuniary damage surely does not include profits which the defendant made by reason of the infringement. The item of profits should not have been allowed or taken into consideration in determining the remedial relief to which the complainants were entitled by way of fine or otherwise.

 We also think that the court below erred in allowing the account of the complainants for fees for legal services, to the extent that there was included therein charges for investigation of law and facts in regard to Mr. Drew's liability, charges as to matters affecting the licensees of the Krentler-Arnold Company, and for the investigation of law and facts with reference to the bringing of a supplemental bill, and charges for services in regard to a contemplated contempt proceeding against Krentler, other than the one before the court. In other words the charges should be confined to the expenses incurred and the legal services rendered in these contempt proceedings, and to such as were reasonably necessary.

The decree of the District Court is affirmed, except so far as it relates to the amount of the fine. In that respect it is vacated and the case is remanded to the District Court for further proceedings not inconsistent with this opinion. No costs.

ANDERSON, Circuit Judge (dissenting).

It seems plain to me that this is in effect a new infringement suit, determined under the guise of contempt proceedings to enforce the decree in the old infringement suit.

By final decree dated March 1, 1928, the Krentler-Arnold Company was held an infringer of the Peterson patent, No. 1,195,266. Meantime, Krentler got up a new device for a hinged last, applied for and obtained a patent, granted December 30, 1930, No. 1,786,-540. This new device, at least in appearance, is very different from the Peterson concept. Whether on a new infringement suit, brought in the proper forum, the court would conclude the Patent Office wrong in not holding it anticipated by the Peterson invention, seems to be a fairly arguable question.

But the fundamental objection to the majority opinion is that we have no jurisdiction to hold this Michigan corporation in contempt. The decree of March 1, 1928, was final—absolutely. The contempt proceedings were filed June 4, 1929. Concededly, only the original jurisdiction will avail the petitioner. This amounts to holding that, in equity, the jurisdiction of a District Court over foreign defendants is unlimited in time; that final decrees may be enforced by contempt proceedings begun at any time in the court of original jurisdiction.

If the jurisdiction of the court below over this Michigan corporation continued a year after final decree, it continued indefinitely; without new process, the foreigner remained always subject to the originally obtained jurisdiction.

For such a doctrine I find no support. In Merrimack Bank v. Clay Center, 219 U. S. 527, 31 S. Ct. 295, 55 L. Ed. 320, Ann. Cas. 1912A, 513, and in the Gompers Case, 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, appeals were pending from the decrees disobeyed. No decree is final, in the sense now involved, pending appeal therefrom; the court above may affirm, modify, or reverse that decree. The cases are not in point. Nor does Pitt v. Davison, 37 N. Y. 235—a case in a code state—help on this question of federal jurisdiction.

If a judgment at law be unsatisfied, or a decree in equity be disobeyed, the remedy is clear—to sue in the proper forum and to offer the judgment or decree as conclusive evidence of the rights alleged; it is res adjudicata, so far as, fairly construed, it covers such rights.

I think the decree below should be reversed and the petition dismissed for lack of jurisdiction.

### On Rehearing.

BINGHAM, Circuit Judge.

 Since our opinion in No. 2525 was handed down on March 10, 1931, the plaintiffs, appellees, have filed a petition for rehearing and a rehearing has been had on the question whether we were right in overruling the action of the District Court in awarding to the plaintiffs in this contempt proceeding the profits which the defendant had made in the sale of its new infringing device.

Diligent search on the part of counsel and of this court has failed to discover any case in which this question has been directly

raised and decided by a Court of Appeals or by the Supreme Court.

In Searls v. Worden, 13 F. 716, 717, Brown, District Judge, sitting in the Circuit Court for the Eastern District of Michigan, in 1882 had a similar question under consideration. That was an equity patent suit in which an interlocutory decree and injunction had been entered restraining the defendant from infringing the plaintiff's patent for whip sockets. On the day the injunction issued, the defendant sold 62 gross of whip sockets in violation of the injunction. Contempt proceedings having been brought, the defendant was adjudged guilty of contempt, and the case was referred to a master to compute the amount of profit realized by the defendant, together with complainant's costs and expenses. In the course of the opinion, the court stated: "The question now arises as to the amount of fine to be imposed, and its distribution. The main question is whether the fine ought to be assessed at a gross sum, in the nature of a penalty, to be paid over to the government, as in an ordinary criminal proceeding, or whether it may be determined by the amount of profit realized by the defendant, and the costs and expenses incurred by the complainant, and the aggregate ordered to be paid over to the complainant in reimbursement of his damages." And after some further observations in relation to the matter as to the practice in state courts under state statutes, the court further observed: "But I notice that in several cases the federal courts have adopted an analogous practice, and imposed a fine equivalent to the profits made by the defendants, and the costs and expenses of complainant, and directed the same to be paid over to the latter by way of reimbursement. In re Mullee, 7 Blatchf. 23 [Fed. Cas. No. 9,911]; Doubleday v. Sherman, 8 Blatchf. 45 [Fed. Cas. No. 4,020]. The validity of this practice is not discussed in these cases, and, without expressing any opinion of my own, I am disposed, with some hesitation, to follow them until corrected by a higher court."

The profits from the sale of the whip sockets being found to be $682 and the complainant's expenses incurred in the contempt proceeding $500, not including counsel fees, which were disallowed, the court imposed their aggregate amount of $1,182, as a fine for the violation of the injunction and ordered that that amount, when collected, be paid over to the complainant.

A final decree having been entered for the complainant, an appeal was taken to the Supreme Court. 121 U. S. 14, 7 S. Ct. 814, 30 L. Ed. 853. In the Supreme Court the final decree in the equity suit and the interlocutory decree in the contempt proceeding were reviewed. It was held that the complainant's patent, upon which the suit was based, was invalid. As to the jurisdiction of the Supreme Court to review these contempt orders, the appellee contended that the contempt proceedings were criminal in character and therefore the court was without jurisdiction to review the orders. The court, however, pointed out that the contempt proceeding was brought in the equity suit and that the fine imposed was remedial in character, being made up of the profits of the defendant from the sale of the whip sockets and the expenses incurred by the complainant in the contempt proceeding, and that the fine was directed to be paid to the complainant; and, such being the case, the interlocutory orders were subject to review on the appeal from the final decree in the suit. It then stated that the complainant's right to the fine, if it existed at all, was founded on his right to the injunction, and that was founded on the validity of his patent; and, the patent having been found invalid, the preliminary injunction was unwarranted and the orders imposing the fine could not be upheld. In its decree it reversed the final decree and the contempt orders and remanded the case, with directions to dismiss the bill, but without prejudice to the power and right of the Circuit Court to punish the contempt referred to in those orders by a proper proceeding— meaning, no doubt, that the Circuit Court, on proceedings being instituted for criminal contempt, had the right to impose a fine payable to the United States for the contempt of court. It is evident that in this case the Supreme Court did not decide that, in a contempt proceeding, in a patent suit, profits made by a defendant through violating an injunction could be considered as an element in determining the amount of the fine imposed by way of relief to the complainant. However, what was here spoken of as profits was nothing but damages which the plaintiff suffered by reason of the defendants selling the plaintiff's patented whip sockets.

The only other patent case involving contempt orders before the Supreme Court which has been brought to our attention as having a possible bearing on the question is the Matter of Christensen Engineering Company, 194 U. S. 458, 24 S. Ct. 729, 48 L. Ed. 1072. This was an application to the Supreme Court for a writ of mandamus to re-

quire the Circuit Court of Appeals for the Second Circuit to reinstate and take jurisdiction of a writ of error for a review of an order of the Circuit Court finding the defendant guilty of contempt and fining it. In that case it appeared that, after an injunction had issued restraining the defendant from infringing the plaintiff's letters patent, the defendant was adjudged guilty of contempt in disobeying the injunction and was ordered to pay a fine of $1,000, one half to the United States and the other half to the complainant; that a writ of error to review this order was sued out and allowed, by the Circuit Court on March 25, 1930, and a transcript of the proceedings certified to the Circuit Court of Appeals; and that, after a hearing on the writ of error, the Court of Appeals dismissed the writ.

The Supreme Court held that the fine payable to the United States was clearly punitive and in vindication of the authority of the court, and, being such, it dominated the proceeding and fixed its character; and that being punitive and not remedial, the method of review was by writ of error and the Circuit Court of Appeals should have taken jurisdiction, without waiting for an appeal from a final decree. This case, certainly, has no bearing upon the question of whether, where the proceedings in contempt are remedial in nature, profits, as such, may be taken into consideration in making up the fine.

McKee Glass Co. v. H. C. Fry Glass Co., 248 F. 125 (3d Circuit), was an equity patent suit in which contempt proceedings were instituted for the violation of a permanent injunction after final decree. In that case the trial court referred all matters of the complainants' injuries and compensation to a master. The master reported, in round numbers, the following items: Net infringing profits realized by defendants, $8,000; royalty at 6 per cent. on defendants' entire sales of $41,713.97, $2.500; complainants' expenses and costs, and master's fee, $4,700; additional compensation for complainant's injuries, $10,000. And the trial court imposed a penalty of $25,151.70. The assignments of error in that case complained of all these items, except the one for $4,700. But at the argument counsel waived all their assignments except those relating to the item of $10,000 and the royalty item of $2,500. Consequently the question of whether the item of $8,000 profits was a proper allowance was not passed upon. The royalty item of $2,500 was passed upon and was plainly an item of damage. Whether the item of $8,000 repre-

sented damage suffered through the infringing sales cannot be gained from the record. At any rate, all objection to the allowance of this item was waived and the question was not considered.

Gordon et al. v. Turco-Halvah Co., Inc., et al. (2nd Circuit) 247 F. 487, is an equity patent suit in which, on March 4, 1915, a final decree was entered by consent of both parties adjudging the plaintiffs sole owners and exclusive licensees under the two patents in suit; also adjudging that the defendants had infringed both patents; and enjoining them against making any candy containing the inventions in question, or either of them, or any candy or food products like or similar to those that they, or any of them, had hitherto made. November 8, 1915, the plaintiffs procured an order to show cause why the defendants should not be punished for contempt. The District Court entered an order finding the defendants in contempt for violating the provisions of the final decree of March 5, 1915, in respect to one of the patents, but not as to the other, and directed a reference to a special master to ascertain the candy so sold in violation of that decree and the profits obtained therefrom. The master found the defendant's profits to be $2,129.70, to which he added the plaintiff's charges and disbursements in the contempt proceeding of $700.92, together with a counsel fee of $750, making in all $3,580.62. The District Court confirmed these findings with a modification of the amount of the counsel fee, and an order was entered on February 19, 1917, against the defendants, in the sum of $2,784.16, for which execution was directed to issue, and the defendants appealed therefrom.

The opinion in this case does not discuss the question, and it apparently was not raised, whether the District Court, after final decree in the original equity suit, could, in a summary contempt proceeding, direct an accounting of profits made by the defendants from the infringing sales and take those profits into consideration in determining the amount of the fine to be imposed. No such question was raised or decided. The sum reported as profits was probably nothing but damages due to infringing sales.

Christensen Engineering Co. v. Westinghouse Air Brake Co. (2d Circuit) 135 F. 774, is the same case above referred to under the name of the Matter of Christensen Engineering Co. that was before the Supreme Court, and involved the action of the Court of Appeals in two contempt proceedings which it was directed by the Supreme Court to review

on writs of error. In this case the contempts consisted in violations of an interlocutory injunction restraining the defendant from infringing plaintiff's letters patent. In both contempt proceedings decrees had been entered finding the defendant guilty of violating the interlocutory injunction. In the first contempt proceeding the order or decree fined the defendant $1,000 and directed one half the fine to be paid to the clerk for the use of the United States and the other half paid to the complainants in the suit. In the second contempt proceeding the order or decree fined the defendant $4,000 and directed a like disposition of the fine.

The Court of Appeals affirmed the orders of the District Court so far as they imposed penalties payable to the United States, but reversed the orders so far as they directed payments to be made to the complainant, as the case did not disclose that the latter orders were "based upon any proved items of loss or expense"; that "a fine exceeding the indemnity to which the plaintiff is entitled is purely punitive"; and that, "when it is imposed by way of indemnity to the aggrieved party, it should not exceed his *actual loss incurred* by the violation of the injunction, including the expenses of the proceedings necessitated in presenting the offense for the judgment of the court." And where such expense is not shown, the expense item should be limited to the taxable costs.

· Cheatham Electric Switching Device Co. v. Transit Development Co. (2d Circuit) 261 F. 792, 796, was an appeal from a decree in a patent equity case, in which review was also sought of an interlocutory decree entered in a contempt proceeding. The plaintiff apparently complained that the District Court erred in refusing to make the punishment in the contempt proceeding larger than it did. In considering the matter Judge Hough, speaking for the Circuit Court of Appeals, said:

"Contempt is not to be regarded as a source of revenue or additional damages to a complainant. A civil contempt, such as this, may result in reimbursing complainant, not for infringements as to which he may seek damages and profits before a master, but for losses and expenses to which he is subjected by the offender's contumacious conduct. This record shows no loss of any kind to plaintiffs by reason of defendant's delay in disconnecting the aforesaid apparatus, and its expenses were reasonably covered by the $150."

This decision of the Circuit Court of Appeals of the Second Circuit, like its other decision in Christensen Engineering Co. v. Westinghouse Air Brake Co., indicates that, in a civil contempt proceeding brought in an equity case, the fine constituting the complainant's reimbursement should consist of losses (damages) and expenses to which he has been subjected by the defendant's contumacious conduct; and that it should not include profits made through infringing sales which did not damage the plaintiff.

This seems to be the attitude of the Court of Appeals in the Sixth Circuit, as will be seen from an examination of the case of Monroe Body Co. v. Herzog, 13 F.(2d) 705, 706. That was an appeal from a decree of the District Court in which it was sought to review an order or decree in a contempt proceeding instituted pending an accounting in the original case in which it was filed. In the contempt proceeding a fine was imposed to be paid to the plaintiff on account of the defendant's continuing infringements. In discussing the latter fine, the court said:

"The specific objection against the imposition of the private penalty is that it was made additional to the damages and profits that might be recovered in the pending accounting, and was not to have any effect upon such accounting. We see no objection to this. A private penalty of this kind is imposed, not to compensate for assessable damages and profits, but with reference to those items of damages which are not thus assessable."

The Court of Appeals in this circuit in the case of Kreplik v. Couch Patents Co., 190 F. 565, 569 (1st Circuit), in a decision written by Judge Hale, reached a like conclusion. That was an equity patent suit in which proceedings for contempt were instituted against the defendant for breach of an injunction restraining him from infringing the plaintiff's patent. He was found guilty of contempt and was ordered to pay a fine of $500 to the clerk of court for the use of the petitioner. In that case it was said:

"In Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797 [34 L. R. A. (N. S.) 874], the Supreme Court has lately passed upon this question. The court clearly draws the vital distinction between proceedings for civil contempt, which are between the original parties, and proceedings at law for criminal contempt, which are between the public and the defendant. The court holds that the proper remedial relief for a disobedience of an injunction

in the equity cause before it would have been to have imposed a fine for the use of the complainant, measured in some degree by the *pecuniary injury* caused by the act of disobedience.

"The two aspects of contempt proceedings have often been before the Circuit Court in this circuit, where it has been clearly recognized that in an equity cause a fine for contempt imposed for the use of the petitioner is not a punitive fine, but merely indemnity to the petitioner for the *loss occasioned* to him by the offensive acts of the defendant."

In Gompers v. Buck's Stove & Range Co., 221 U. S. 418, at pages 443, 444, 31 S. Ct. 492, 499, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, the court said:

"In this case the alleged contempt did not consist in the defendant's refusing to do any affirmative act required, but rather in doing that which had been prohibited. The only possible remedial relief for such disobedience would have been to impose a fine for the use of complainant, measured in some degree by the *pecuniary injury* caused by the act of disobedience."

The Gompers Case was not a patent case, but it was an equity case in which the contempt proceedings were brought. The fact that it was not a patent case can make no difference as to the nature of the elements of which the penalty may consist. That case, the Kreplik Case, and the cases in the Second and Sixth Circuits, point out, if they point out anything, that a remedial fine in a contempt proceeding is to be based upon the pecuniary injury or damage, which the act of disobedience caused the complainant, and such reasonable expenses as the act of disobedience occasioned through the bringing of the proceeding. It is to compensate him for his damage thus occasioned. It is not an attempt to restore to him the profits which he might recover in an equity suit for discovery and accounting, where the sales were so conducted that the plaintiff could not be shown to have been thereby pecuniarily damaged.

If the plaintiffs in this case had been able to prove that the infringing sales, out of which the profits were realized, caused them to suffer pecuniary damage, or had been able to prove what would have been a reasonable royalty for the use of their patent and that they had lost the same through the defendant's conduct, they could have established a case for the allowance of damages arising out of the infringing sales. But they failed by either of these methods to show that they were pecuniarily injured, and neither the master nor the court found that they suffered any damages.

This contempt proceeding in no way affects any equitable remedy which the plaintiffs have or may have had to recover profits, and the case of Root v. Railway, 105 U. S. 189, 26 L. Ed. 975, does not controvert this proposition. That case proceeds upon the theory that, in the absence of some recognized ground of equity jurisdiction, the owner of an expired patent cannot maintain a bill in equity for profits; that a bill "for naked account of profits" will not suffice. In this respect the plaintiffs' equitable remedy, if they have any, does not stand differently from what it would if this court had no jurisdiction to entertain the contempt proceeding and had dismissed it.

In view of the conclusion we have reached, our previous order in this case is affirmed.

ANDERSON, Circuit Judge (dissenting).

Still asserting, on the facts in this case, no continuing jurisdiction over this Michigan corporation, I now add that (assuming jurisdiction and violation of the injunction) I can see no reason why the profits derived from the alleged violation of the injunction are not recoverable; that at least they may be taken as a guide in assessing petitioner's damages.

Rights, under a *previously* obtained injunction, are at least as great as rights under a *presently* obtained injunction. Violation of such rights ought to have like remedy, both in nature and in extent. The patent owner, if now suing in equity for infringement, could of course recover the infringer's profits. Rev. St. § 4921 (35 USCA § 70).

But the present holding is that the persistent infringer, instead of being held, under Rev. St. § 4919 (35 USCA § 67), liable for punitive damages (no damages whatever being shown), shall escape all accountability for its profits, made as the result of its alleged contumacy.

In Brown v. Lanyon, 148 F. 838 (C. C. A., 8th) it was held that an action at law cannot be maintained for the sole purpose of recovering an infringer's profits. Compare Walker Patents (5th Ed.) § 555. In Root v. Railway, 105 U. S. 189, 26 L. Ed. 975, it was held that the owner of an expired patent could not maintain a bill in equity solely for an account of profits and damages against an

infringer during the life of the patent; that his only remedy was at law. Compare Tilghman v. Proctor, 125 U. S. 136, 148, 8 S. Ct. 894, 31 L. Ed. 664.

The present decision apparently leaves this appellant without any remedy, either at law or in equity, to obtain its just rights.

None of the cases cited and reviewed in the majority opinion seems to me to support the conclusion. The proceedings are purely remedial. I think the appellant entitled to full relief.