**NOT FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| U.S. SECURITIES & EXCHANGE COMMISSION, | No. 22-55093 |
| Plaintiff-Appellee, | D.C. No. 8:20-cv-00124-DOC-JDE |
| v. | |
| ROBERT WILLIAM RUSSELL, | MEMORANDUM[*] |
| Defendant-Appellant, | |
| and | |
| GUY SCOTT GRIFFITHE; RENEWABLE TECHNOLOGIES SOLUTION, INC.; GREEN ACRES PHARMS, LLC, | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted June 27, 2023
Pasadena, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: N.R. SMITH, LEE, and VANDYKE, Circuit Judges.
Dissent by Judge LEE.

The Securities and Exchange Commission (SEC) brought a civil enforcement action against Robert Russell and Guy Griffithe for defrauding 25 investors out of $4.85 million through the sale of unregistered and fictitious securities in Russell's cannabis company, SMRB, LLC (SMRB). Russell appeals the district court's judgment ordering him to pay $275,153.90 in disgorgement (plus prejudgment interest) and a civil penalty of $378,888.93.[1] We have jurisdiction under 28 U.S.C. § 1291 and review a "district court's formulation of remedies under the Securities Act and the Exchange Act" for abuse of discretion. *SEC v. Husain*, 70 F.4th 1173, 1180 (9th Cir. 2023). We affirm.

The district court's disgorgement award was not an abuse of discretion. "[A] disgorgement award that does not exceed a wrongdoer's net profits . . . is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020). Thus, the general rule is that "courts must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5)." *Id*. at 1950. However, the Supreme Court has "carved out an exception" to this rule. *Id*. at 1945. If "the entire profit of a business or undertaking results from the wrongful activity," then a

---

[1] Griffithe did not appeal.

2

defendant "will not be allowed to diminish the show of profits by putting in . . . inequitable deductions." *Id*. (cleaned up); *see also id*. at 1950 (stating that a district court need not deduct legitimate expenses if "they were incurred for the purposes of furthering an entirely fraudulent scheme").

Russell argues that the records he submitted in his opposition to the SEC's motion for entry of final judgment showed that what he spent on SMRB ($2,403,334.62) exceeded the total investor proceeds he took in ($1,940,459.90) by $462,874.72. Thus, Russell asserts that he "suffered net losses, and disgorgement was inapplicable under *Liu*." Russell's argument fails, because this case falls squarely within the "carved out" exception that *Liu* recognized. 140 S. Ct. at 1945. Russell's "entire profit . . . result[ed] from the wrongful activity" at issue here—securities fraud. *Id*. Russell conceded at oral argument that SMRB did not generate any revenue. Instead, all of Russell's gross proceeds from SMRB were derived from investors who were deceived, often in

elaborate fashion, into believing that they were buying shares in a fast-growing cannabis business which, in reality, never got off the ground.[2]

Further, all of the securities transactions at issue were unlawful. Russell and his wife retained full ownership of SMRB, meaning all of the SMRB shares sold to investors conveyed no "bona fide ownership or income-sharing stake," and were thus "fictitious" and lacking in any "actual economic substance or value." Russell also engaged in these "sham transactions" without receiving the requisite regulatory approval from the Washington State Liquor and Cannabis Board to sell shares in a cannabis business. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1097 (9th Cir. 2010) ("Allowing the defendants to retain *any* money from

---

[2] There is evidence in the record that suggests SMRB was never a legitimate business. For example, Russell asserted to the district court that he spent just $1,058.03 on irrigation in the more than two years that SMRB was licensed to produce and process cannabis. But "cannabis, whether grown indoors or outdoors, is a prodigiously thirsty plant," with one study estimating that a single cannabis plant consumes an average of six gallons of water per day. Chester Harper, *All Is for the Best in the Best of All Possible Worlds: The Unnecessary Environmental Costs of Federal Cannabis Prohibition*, 21 Vt. J. Envtl. L. 55, 63 (2019); *see also* Asha Wiegand-Shahani, *Illegal Water Use, Marijuana, and California's Environment*, 48 Envtl. L. Rep. News & Analysis 10625, 10627 (2018) (describing the amount of water needed to grow cannabis as "prohibitively expensive"). The fact that Russell spent so little on irrigation gives rise to an inference that SMRB was not actually in the business of growing cannabis at all, and was actually an "entirely fraudulent scheme." *Liu*, 1940 S. Ct. at 1950.

the unlawful transactions would allow them to unjustly profit from exchanging unregistered securities for cash . . . .").

Because the only revenues generated by SMRB were the funds unlawfully obtained from investors, SMRB's "entire profit" arose from Russell's wrongdoing, and the district court was not required to deduct *any* of Russell's business expenses from the investor funds he took in before ordering disgorgement, *see Liu*, 1940 S. Ct. at 1945, even though the scheme ultimately lost money, *see SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998). Thus, the district court could lawfully have ordered Russell to disgorge all of his gross proceeds, which were several multiples larger than the actual disgorgement award (which was limited to the amount of a yacht purchase). Therefore, the district court acted within its discretion in ordering Russell to disgorge only $275,153.90, as a "reasonable approximation" of his ill-gotten gains. *Platforms Wireless*, 617 F.3d at 1096.

The district court also did not abuse its discretion in ordering Russell to pay a third-tier civil penalty of $378,888.93. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Russell does not dispute that his securities violations "involved fraud, deceit, [or] manipulation" and "resulted in substantial losses" to investors, nor does he argue that the civil penalty amount exceeded either the

fixed statutory maximum or his gross pecuniary gain. 15 U.S.C. §§ 77t(d)(2)(C).

Instead, Russell argues that the district court erred by failing to cite the factors set

forth in *SEC v. Murphy*. 626 F.2d 633, 655 (9th Cir. 1980). We find no binding

precedent (and Russell cites none to us) that requires a district court to discuss any

particular factors when determining whether to impose civil penalties. Rather, a

district court must "assess the totality of the circumstances surrounding the

defendant and his violations," *id*.; *see also Husain*, 70 F.4th at 1184, and provide

sufficient "information or explanation concerning the basis" for its decision, *Hayes*

*v. Heckler*, 785 F.2d 1455, 1457 (9th Cir. 1986) (per curiam). Here, the district

court observed "the degree of fraud and deceit" in Russell's conduct, described

how he "used investor money to finance a yacht purchase and pay other vendors,"

and stated that Russell's "wrongful" actions "resulted in substantial harm to

investors who trusted his business with their money," but found that the SEC's

requested penalty amount was "unduly large for Russell's level of culpability in

the scheme" as compared to Griffithe's, and reduced the penalty accordingly.

Under the "substantial deference" we grant "to the trial court in fashioning a

penalty," the district court's analysis was sufficient. *SEC v. Murphy*, 50 F.4th 832, 849 (9th Cir. 2022).[3]

**AFFIRMED.**

---

[3] We reject Russell's remaining arguments. The district court did not err "by premising i[t]s computation of civil penalties on the erroneous disgorgement order" because the disgorgement order was not erroneous. Nor did the district court misstate the purpose of the civil penalty remedy—by basing the imposition of third-tier civil penalties on "the degree of fraud and deceit and substantial investor losses," the district court made clear that it contemplated the civil penalty as a punitive sanction for Russell's conduct.

FILED

AUG 3 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LEE, Circuit Judge, dissenting:

Robert Russell and Guy Griffithe sold unregistered and fictitious securities in Russell's cannabis company to the tune of $1,940,559.90 in illicit proceeds. Russell, however, contends that disgorgement under 15 U.S.C. § 78u(d)(5)—a profit-based penalty—is unwarranted because his business had $2,403,344.62 in legitimate expenses, eclipsing the proceeds and thus reducing the illicit profit to zero. Without fully addressing this argument, the district court ordered $275,153.90 in disgorgement. Premised on the disgorgement order, the district court also ordered a civil penalty of $378,888.93. While I agree with the majority that the district court has latitude when deriving a civil penalty, I believe that the disgorgement was error. This flaw in turn undermines the civil penalty. Thus, I respectfully dissent.

My main issue is with the majority's reading of *Liu v. SEC*, 140 S. Ct. 1936 (2020). As the majority recognizes, *Liu* held that a court "*must* deduct legitimate expenses before ordering disgorgement under § 78u(d)(5)." *Id.* at 1950 (emphasis added). But the majority believes that this rule does not apply when the "entire profit of a business" results from a fraud; it reads *Liu* to hold that "profits" may be disgorged from an entirely fraudulent scheme without any obligation to account for expenses. Maj. Disp. at 2–3. While *Liu* is not a model of clarity on this point, I believe the majority misreads it, and its interpretation conflicts with the nature of

equitable disgorgement. By removing expenses from the equation, the majority erroneously equates illicit profits with illicit revenues, commanding Russell to disgorge ill-gotten gains that may not exist. *See Liu*, 140 S. Ct. at 1946–47 (describing the refusal to deduct legitimate expenses as being in "considerable tension with equity practices" and the goal of disgorging net profits).

*Liu*'s exception appears to reflect the unremarkable proposition that equitable disgorgement does not require a court to deduct *illegitimate* expenses to determine the net profit to be disgorged. For example, no one disputes that Russell cannot reduce his disgorgement penalty by claiming as an expense his purchase of a personal yacht. And when defining the boundaries of the exception, the *Liu* Court confined its example of "expenses" to things like personal yachts. It explained that a "defendant 'will not be allowed to diminish the show of profits by putting in unconscionable claims for personal services or other inequitable deductions.'" *Id.* at 1945 (quoting *Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189, 203 (1882)). *Liu* goes on to acknowledge that a court should not deduct expenses that "were brought for the purposes of the [fraud]" or constituted "extraordinary salaries." *Id.*

In other words, *Liu* focused on the refusal to deduct things like unconscionable claims for personal services, expenses in furtherance of the fraud, and excessive salaries—that is, illegitimate expenses; it does nothing to disrupt the rule that a court

must deduct legitimate expenses when calculating net profits.[1] The Court also recognized that the "exception requires ascertaining whether expenses are legitimate or whether they are merely wrongful gains 'under another name.'" *Id.* at 1950. That suggests that the court drew a distinction between legitimate and illegitimate expenses in assessing disgorgement.

In sum, I believe that under *Liu* the district court must deduct legitimate business expenses before ordering disgorgement under § 78u(d)(5). Because it is unclear whether the district court did so, I would reverse and remand.

---

[1] The cases cited in *Liu* all referenced illegitimate expenses. *See Providence Rubber Co. v. Goodyear*, 76 U.S. (9 Wall.) 788, 802-803 (1870) (refusing to deduct "extraordinary salaries" but deducting debts, rents, interest payments, the cost of purchasing materials, and "the usual salaries of the managing officers"); *Callaghan v. Myers*, 128 U.S. 617, 663–64, 665 (1888) (refusing to deduct expenses for "family and personal services" but, to the extent possible, deducting the "actual and legitimate manufacturing costs").